45 U.S. 155
 4 How. 155
 11 L.Ed. 918
 LUCIUS W. STOCKTON AND DANIEL MOORE, PLAINTIFFS IN ERROR,
v.
HARRIET BISHOP.
 January Term, 1846
 
 1
 THIS case was brought up, by writ of error, from the Circuit Court of the United States for West Pennsylvania.
 
 
 2
 There was no bill of exceptions signed by the judge, and the record presented the following appearance.
 
 
 3
 Among the rolls, records, and judicial proceedings of the Circuit Court of the United States, in and for the Western District of Pennsylvania, in the Third Circuit, may be found the following words and figures, to wit:——
 
 Copy of Docket Entries.
 
 4
 McCandless, and Harriet Bishop, a citizen }
 
 
 5
 McClure & Biddle. of the State of Ohio, }
 
 vs. } 18
 
 6
 Darragh, Loomis, Lucius W. Stockton and Dan- }
 
 
 7
 Mahon & Washington. iel Moore, citizens of Penn. }
 
 
 8
 Summons case, exit September 17th, 1842.
 
 
 9
 1842, November 4th, returned. Served by leaving a copy at the dwelling-house of, D. Moore, November 1st, 1842, and personally on L. W. Stockton, November 2d, 1842.
 
 
 10
 1843, Jan. 12th. Narr. filed.
 
 
 11
 1843, February 6th. On motion of Mr. Darragh, rule for security for costs.
 
 
 12
 1843, February 7th. Rule for security for costs returned, 'Served on Mr. McClure, February 7th, 1843.'
 
 
 13
 1843, April 5th. Consent of attorney for defendants, that a commission issue forthwith to take testimony on part of plaintiff, and declension to file cross interrogatories. (See paper filed.)
 
 
 14
 1843, April 5th. Interrogatories on part of plaintiff filed, and commission issued to Albert G. Westgate, Esq., of McConnellsville, Morgan county, Ohio, commissioner named by plaintiff.
 
 
 15
 1843, April 10th. Stipulation of John Sarber, as security for costs, filed.
 
 
 16
 1843, April 18th. Commission, with depositions taken before Albert G. Westgate, Esq., returned and filed.
 
 
 17
 1843, May 10th. Plea of defendants filed.
 
 
 18
 1843, May 10th. Agreement of attorneys filed.
 
 
 19
 1843, May 17th. Continued.
 
 
 20
 1843, October 5th. Subpoena on part of defendants to Dr. Kennedy.
 
 
 21
 1843, October 28th. Subpoena on part of defendants to Dr. Campbell.
 
 
 22
 1843, October 30th and 31st. Subpoenas on part of plaintiff to Dr. A. H. Campbell, James Corbin, James Smith, James Snyder, and Daniel Brown.
 
 
 23
 1843, November 20th. Above subpoenas returned.
 
 
 24
 1843, November 22d, 23d, 24th, and 25th. Tried by jury, and, 25th, verdict for plaintiff for six thousand five hundred dollars ($6,500), with costs of suit.
 
 
 25
 1843, November 24th. Defendants' points filed.
 
 
 26
 1843, November 25th. Motion in arrest of judgment, and for a new trial.
 
 
 27
 1843, November 27th. Plaintiff's bill of costs filed.
 
 
 28
 1843, November 30th. Reasons in arrest of judgment, and for a new trial, filed.
 
 
 29
 1843, December 1st. Argument for a new trial commenced.
 
 
 30
 1843, December 7th. Argument of motion for new trial continued and concluded by Messrs. Mahon and Loomis, for defendants, and Mr. Biddle, contra, for plaintiff.
 
 
 31
 Same day. Affidavit of Jacob Murphy filed.
 
 
 32
 Same say. After argument, defendants' points overruled, and judgment on the verdict; stay of execution for thirty days.
 
 
 33
 Same day. Plaintiff's counsel desired the sanction of the court to the following amendment to the verdict, objected to by defendants' counsel. Objections filed by order of the court; after argument, objections overruled, and verdict amended as follows, viz.:—'And now, to wit, December 7th, 1843, inasmuch as the plaintiff, on the trial of the cause, offered proof of but a single disaster, and its injurious consequences, as set forth in the second count of the declaration, the verdict is amended accordingly, and judgment entered for the plaintiff on the said second count, and for the defendants on the first count.'
 
 
 34
 1843, December 15th. Defendants enter into a bond, which is approved by Judge Irwin, in the sum of thirteen thousand dollars, and sue out their writ of error.
 
 
 35
 1843, December 15th. Citation issued.
 
 
 36
 1843, December 15th. Writ of error allowed and issued.
 
 
 37
 1843, December 16th. Citation returned; served by copy on R. Biddle, Esq., attorney of defendants.
 
 Copy of Declaration.
 
 38
 In the Circuit Court of the United States for the Western District of Pennsylvania.
 
 
 39
 Lucius W. Stockton, a citizen of Pennsylvania, and Daniel Moore, also a citizen of Pennsylvania, were summoned to answer Harriet Bishop, a citizen of Ohio, in an action on the case. Whereupon the said Harriet Bishop, by McCandless & McClure, her attorneys, complains, for that whereas the said defendants, before and after the time of committing the grievance hereinafter mentioned, were owners and proprietors of a certain line of stagecoaches for the carriage and conveyance of passengers from Baltimore, in the State of Maryland, to Wheeling, in the State of Virginia, for hire and reward, to the said defendants in that behalf; and the said defendants being such owners and proprietors of the said line of coaches so as aforesaid, thereupon heretofore, to wit, at the special instance and request of the said defendants, became and was a passenger in the said line of coaches, to be safely and securely carried and conveyed thereby on a certain journey, to wit, from Baltimore aforesaid to Wheeling aforesaid, for a certain fare and reward to the said defendants in that behalf; and the said defendants then and there received the said plaintiff as such passenger as aforesaid; and thereupon it then and there became and was the duty of the said defendants to use due and proper care that the said plaintiff should be carefully and securely carried and conveyed by and upon the said line of coaches on the said journey; yet the said defendants, not regarding their duty in that behalf, did not use due and proper care that the said plaintiff should be safely and securely carried and conveyed by and upon the said stagecoach, on the said journey from Baltimore aforesaid to Wheeling aforesaid, to the damage of the plaintiff twenty thousand dollars.
 
 
 40
 And whereas also, heretofore, to wit, on the day and year aforesaid, at Baltimore aforesaid, the said plaintiff, at the said special instance and request of the said defendants, became and was a passenger by a certain other coach, to be safely and securely carried and conveyed thereby on a certain journey, to wit, from Baltimore aforesaid to Wheeling aforesaid, for certain rewards to the said defendants in that behalf; and thereupon it then and there became and was the duty of the said defendants to use due and proper care that the said plaintiff should be safely and securely carried and conveyed, by the said line of coaches, on the said journey from Baltimore aforesaid to Wheeling aforesaid; yet the said defendants, not regarding their duty in this behalf, did not use due and proper care that the said plaintiff should be safely and securely carried and conveyed, by the last mentioned coach, on the said journey from Baltimore aforesaid to Wheeling aforesaid; but wholly neglected to do so, and by reason whereof one of the legs, one of the arms, two of the ribs, [and] the collar-bone of the said plaintiff then and there became and were fractured and broken, and the said plaintiff was then and there otherwise greatly bruised, wounded, and injured; and also by means of the premises the said plaintiff became and was sick, sore, lame, and disordered, and so remained and continued for a long space of time, to wit, hitherto; during all which time the said plaintiff suffered, and underwent, and endured great pain, and was hindred and prevented from transacting and attending her necessary and lawful affairs and business by her during all that time to be performed and transacted, and lost and was deprived of divers great gains, and advantages, and profits, which she might, and otherwise would, have derived and acquired from the same; and thereby also the said plaintiff was forced and obliged to pay, lay out, and expend divers other large sums of money, amounting, in the whole, to the sum of one thousand dollars, in and about the endeavouring to be cured of the last mentioned bruises, fractures, and injuries received as last aforesaid, to the damage of the said plaintiff twenty thousand dollars; and therefore she brings suit.
 
 
 41
 McANDLESS & McCLURE, Plaintiff's attorneys.
 
 
 42
 (Then followed a summons, and a commission to take testimony, under which several witnesses were examined, and the record proceeded.)
 
 Copy of Plea.
 
 43
 BISHIP v. STOCKTON ET AL. Circuit Court of the United States for the Western District of Pennsylvania.
 
 
 44
 The defendants, by Cornelius Darragh, their attorney, come and defend the wrong, when, &c., and for plea say, that they are not guilty of the matters and things alleged against them in the plaintiff's declaration, and of this they put themselves upon the country.
 
 
 45
 May 10, 1843.
 
 
 46
 C. DARRAGH, for defendants.
 
 Copy of Defendants' Points.
 
 47
 HARRIET BISHOP v. STOCKTON & MOORE.
 
 
 48
 The counsel of the defendants respectfully request the court to instruct the jury as follows:——
 
 
 49
 1st. That the proprietors of a stagecoach do not warrant the safety of their passengers, in the character of common carriers; and that they are not responsible for mere accidents to the persons of passengers, but only for the want of due care. (Given.)
 
 
 50
 2d. That they do not warrant the safety of passengers; their undertaking, as to them, goes no further than this; that as far as human wisdom and vigilance can go, they will provide for the safe conveyance of their passengers. (Given.)
 
 
 51
 3d. That if the jury believe that the accident in this case was caused by the intoxication of James Corbin the driver, but that he was not only not in the habit of drinking intoxicating liquors, but was intoxicated, on this occasion, for the first time in his life; that, in this event, the defendants will have exercised due care in the selection and employment of James Corbin as a driver, and will not be liable in this action. (Refused.)
 
 
 52
 4th. That if the jury believe that the accident was caused by the intoxication of James Corbin, yet if they also believe that a long course of previous habitual good conduct through a series of years, from his boyhood to the time of this accident in question, had satisfied the defendants, the tavern-keepers with whom James Corbin boarded, and his associates, that he was a temperate and an abstemious man, that then the defendants, as far as ordinary wisdom and vigilance could go, did provide for the safety to their passengers in the selection and employment of James Corbin as a driver, and that they are not liable in this action. (Refused.)
 
 
 53
 5th. If the jury believe that, at the time of the accident, the coach was on the upper and safer portion of the road, and that the accident occurred in the effort of Corbin to take up his horses after descending the hill, that the defendants are not liable in this action. (Refused.)
 
 
 54
 6th. That although the jury may believe that Corbin was, at the time of the accident, partially intoxicated, still, if he was not so much intoxicated as to be incapable of the management and control of this team, and the accident did not arise from that cause, but from the state of the weather, obscurity of the night, and the condition of the roads, that the defendants are not liable in this action; especially if the jury believe that the said Corbin had heretofore sustained an unexceptionable character for skill, care, and sobriety. (Refused.)
 
 
 55
 7th. If the jury believe that the driver was a person of competent skill, of good habits, and in every respect qualified and suitably prepared for the business in which he was engaged, plaintiff cannot recover, unless they were clearly satisfied that, on this occasion, the disaster was attributable to the fault of the driver, and not to the darkness of the night, or other accidental cause, and that said accident would not have occurred but for the fault of the driver. (Given.)
 
 Defendants' Exceptions.
 
 56
 HARRIET BISHOP v. STOCKTON & MOORE. In the Circuit Court of the United States.
 
 
 57
 The counsel for defendants respectfully except to the refusal of the court to instruct the jury as prayed for on all the points presented by them, except the first, second, and seventh.
 
 
 58
 MAHON & WASHINGTON,
 
 
 59
 METCALF & LOOMIS, Attorneys for defendants.
 
 
 60
 25th November, 1843.
 
 
 61
 Copy of Reasons for a New Trial, and in Arrest of Judgment.
 
 
 62
 HARRIET BISHOP v. STOCKTON & MOORE.
 
 
 63
 The counsel for defendants move the court for a new trial, for the following reasons, viz.:——
 
 
 64
 1. The verdict is against the weight of evidence.
 
 
 65
 2. It is rendered for vindictive damages.
 
 
 66
 3. It is not the result of the deliberate opinions of the jurors, or of comparison of their several opinions, but the amount was fixed and determined by the average of different sums named by the jurors.
 
 
 67
 They move in arrest of judgment, because,——
 
 
 68
 1. No sufficient cause of action is set forth in plaintiff's first count of narr., and the verdict is general on both counts.
 
 
 69
 2. No sufficient cause of action is set forth in either count; there being no allegation that the amount charged for fare, or passage money, had in fact been paid by plaintiff.
 
 
 70
 3. General errors.
 
 
 71
 MAHON & WASHINGTON, Attorneys for defendants.
 
 
 72
 November 27th, 1843.
 
 Copy of Affidavit of Jacob Murphy.
 
 73
 Personally appeared before me, a justice of the peace in and for the county of Fayette, Jacob Murphy, who, being sworn, doth depose and say, that he was a juror in the Circuit Court of the United [States] for the Western District of Pennsylvania, for November term, 1843, and that he was one of the panel who tried the case of Harriet Bishop v. L. W. Stockton and Daniel Moore, for damages accruing from the upsetting of a stagecoach, and that the method adopted by the jury by which they settled on the amount of the verdict was this: it was agreed that each juror should mark the sum he found, and that the total amount, divided by twelve, should, without alteration, be the amount of the verdict; in accordance with their agreement, each juryman put down the amount he thought proper; they then added the whole together, and divided the amount by twelve, and the product was six thousand five hundred dollars, which was reported as the verdict of the jury.
 
 
 74
 JACOB MURPHY.
 
 
 75
 Sworn and subscribed before me, the 5th December, 1843.
 
 
 76
 CLEMENT WOOD, J. P.
 
 
 77
 The verdict as ordered to [be] entered by the Court.
 
 
 78
 And now, to wit, December 7th, 1843, inasmuch as the plaintiff, on the trial of the cause, offered proof of but a single disaster, and its injurious consequences, as set forth in the second count of the declaration, the verdict is amended accordingly, and judgment entered for the plaintiff on the said second count, and for the defendants on the first count.
 
 Copy of Defendants' Objections.
 
 79
 In the Circuit Court of the United States, Western District of Pennsylvania.
 
 
 80
 HARRIET BISHOP v. L. W. STOCKTON ET AL.
 
 
 81
 The counsel for the plaintiff having moved the court to make the following entry of record in the cause, to wit:—'And now, to wit, November, 1843, inasmuch as the plaintiff, on the trial of the cause, offered proof of but a single disaster, and its injurious consequences, as set forth in the second count of the declaration, the verdict is amended accordingly, and judgment entered for the plaintiff, on said second count, and for the defendant on the first count.'
 
 
 82
 The defendants, by their counsel, now, to wit, November 7th, 1843, appear in court, and object to the allowance of said motion by the court, and to any permission by the court that such entry as is above indicated should be made in the cause, and in support of their objection assign the following causes, to wit: that the issue, if any, joined by the pleadings between the parties, was upon the whole declaration; that the jury were sworn to try the issue, if any, joined upon the whole declaration; that the jury returned their verdict in writing in the following words:——
 
 
 83
 HARRIET BISHOP v. STOCKTON, MOORE, & CO.
 
 
 84
 We, the jurors sworn and empanelled in this cause, do find for the plaintiff six thousand five hundred dollars, with costs of suit, this 25th day of November, A. D. 1843.
 
 
 85
 Which said verdict was received by the court; and thereupon an entry was made of record in the cause, in the following words, to wit:——
 
 
 86
 'HARRIET BISHOP v. STOCKTON & MOORE.
 
 
 87
 'Jury find for the plaintiff six thousand five hundred dollars, with costs of suit.'
 
 
 88
 That the verdict so found by the jury was found by them upon the entire issue or issues, if any, between the parties, and upon the whole declaration, embracing both the first and second counts thereof; that said verdict is general; that the testimony given in the cause was as applicable to the first as to the second count of the declaration; that the defendants have as good a right to claim that the verdict of the jury should be amended, by entering it upon the first count of the declaration for the plaintiff, and judgment thereon for the plaintiff, and judgment on the second count for the defendants, as the plaintiff has to claim that the proposed entry should be made. That the jury having given a general verdict for entire damages on both counts of the declaration, which verdict was received by the court, and entered of record without objection from the plaintiff, and the jury having separated, the court have not the legal right, and if they possess the legal right, ought not, in the exercise of a sound discretion, to modify the verdict of the jury in the manner proposed by the plaintiff's counsel; which objections, and reasons in support thereof, are respectfully submitted by the defendants, to be filed and entered of record in the cause.
 
 
 89
 METCALF & LOOMIS,
 
 
 90
 MAHON & WASHINGTON,
 
 
 91
 Attorneys for defendants.
 
 
 92
 
 United States, Western District of Pennsylvania, ss.:
 
 
 
 93
 I, Edward J. Roberts, clerk of the Circuit Court of the United States in and for the Western District of Pennsylvania, do hereby certify, that the foregoing is a full, true, and complete exemplification of the record in the case of Harriet Bishop, a citizen of the State of Ohio, against Lucius W. Stockton and Daniel Moore, citizens of Pennsylvania.
 
 
 94
 In testimony whereof, I have hereunto set my hand, and affixed the seal of the said court, at Pittsburg, this twentieth day of December, A. D. 1843, and in the sixty-eighth year of the independence of the said United States.
 
 
 95
 E. J. ROBERTS, Clerk.
 
 
 96
 [L. S.]
 
 
 97
 A writ of error, sued out on behalf of Stockton & Moore, brought up the record in the form in which it is stated above.
 
 
 98
 The case was argued by Mr. Bledsoe and Mr. Coxe for the plaintiffs in error, and Mr. Richard Biddle (in a printed argument), for the defendant in error.
 
 
 99
 Mr. Bledsoe for plaintiffs in error.
 
 
 100
 Perhaps no record ever came up to this court in such an imperfect state. There appears to be no issue, no venire, no jury empanelled or sworn, no verdict, except where it is incidentally mentioned, no bill of exceptions signed, no judgment of the court for a specific sum. It is true, that there is a verdict spoken of in the docket entries, but these are only to refresh the memory of the clerk. 10 Ohio Rep. 200.
 
 
 101
 Nothing is a part of the record except the pleadings, or what is referred to in the opinion of the court. 5 Peters, 254.
 
 
 102
 There is no regular judgment of the court for a specific sum. How could an action of debt or a scire facias be maintained upon such a record? 5 Dane's Abr. 221; 1 Arkansas Rep. 346, 347; 2 Arkansas Rep. 390; 1 Robinson's Practice, 390; 6 Randolph, 30-32; 4 Munford, 262; Yelverton, 107; 4 Leonard, 61; 1 Chitty's Plead. 356.
 
 
 103
 The declaration is radically defective. The first count was abandoned, and judgment entered on the second count. This must therefore stand alone, and, taken by itself, it discloses no cause of action. Two reasons exist for this. 1. There is nothing stated from which an implied undertaking can be inferred to carry safely. 2. There is no such express undertaking averred.
 
 
 104
 1. In order to raise the implication, the fact must be averred, that the other party were common carriers. This is necessary, as a foundation for the implied assumpsit. 1 Wendell, 272; 6 J. B. Moore, 158; 2 Chitty's Plead. 356, note. See also Story on Bailments, 374, 591.
 
 
 105
 The declaration was designed to be in tort. It is not averred that any reward was to be paid by the plaintiff, or that there was any promise at all. Lawes on Pleading, under the head of 'Promise.'
 
 
 106
 Mr. Biddle, for defendant in error.
 
 
 107
 Under the 40th Rule of Court, the following remarks are respectfully submitted on behalf of the defendant in error.
 
 
 108
 No specification of errors having been filed, the points which will be pressed are left to be inferred from what took place in the court below.
 
 
 109
 First. As to the declaration. It may be alleged that the first count is bad, and that the verdict, being general on both counts, is thereby vitiated. The reply is:—1. The count is not bad. It provides for the event of no special damage being made out. It would, at least, justify nominal damages. It alleges that the defendants were engaged in a duty to the public as carriers of passengers; that they undertook to carry the plaintiff safely, and failed to do so.
 
 
 110
 Further, it is to be remembered that there was no demurrer to the count, and the objection therefore comes after verdict. Now it is a familiar rule, that a cause of action defectively or inaccurately set forth is cured by the verdict, because, to entitle the plaintiff to recover, all circumstances necessary, in form or in substance, to make out his cause of action, so imperfectly stated, must be proved at the trial. (9 Wheat. 595; 1 Peters's C. C. R. 482.) But, 2. This inquiry is unnecessary, as the judgment is entered on the second count. The recent case of Matthewson's Administrators v. Grant's Administrator, in this court (2 Howard, 263), renders superfluous any argument as to the right and the duty of the court to permit the amendment prayed for. The second count is the familiar one in case, not requiring any averment of the payment of money, found in 2 Chitty's Pleadings, 647 (ed. of 1840), and in 2 Chitty's Precedents, 506, a (ed. of 1839), and was pursued in Curtis v. Drinkwater, 2 Barn. and Adolph. 169 (22 English C. L. Rep. 51). Had such averment been necessary, the omission would be cured after verdict, on the principle heretofore noticed.
 
 
 111
 Second. As to any irregularities committed by the jury in making up their verdict, they are not examinable in a court of error. 1 Peters's C. C. R. 159. All these matters are referred to the sound discretion of the court below. The refusal to grant a new trial is not the subject of a writ of error. 4 Wheat. 223; 6 Wheat. 547.
 
 
 112
 Nothing, however, can be better settled, than that the Circuit Court was right in refusing to act upon the affidavit of a juror. 2 Tidd's Pr. 709; Vaise v. Delaval, 1 T. R. 11; Owen v. Warburton, 4 Bos. & Pull. 326; 4 Wash. C. C. R. 32; 4 Binn. 150; 5 Conn. R. 348; 3 Gill and Johns. 473; 2 Greenleaf, 41; 2 Tyler's Verm. R. 13.
 
 
 113
 That the process resorted to by the jury is not open to just exception, even if established by unexceptionable evidence, see Grinnell v. Phillips, 1 Mass. R. 541; Commonwealth v. Drew, 4 Mass. R. 399; Goodwin v. Philips, Lofft, 71; Lawrence v. Boswell, Sayer, 100.
 
 
 114
 Third. As to the instructions prayed for by the counsel of the defendants below, and refused by the court. The late lamented Judge Baldwin delivered in this case an elaborate and comprehensive charge to the jury, in which the law, as settled by this court in Stokes v. Saltonstall, 13 Peters, 181, was clearly laid down and enforced. Unfortunately it cannot now be found. To this charge no exception was taken. It covered the whole ground, and the learned judge might well, therefore, have refused to notice any of the points submitted by defendants' counsel. This course was pursued by the circuit judge in the trial of Stokes v. Saltonstall (see 13 Peters, 185). Judge Baldwin, however, thought proper to yield his assent to the points submitted, so far as he could do so with propriety. His answers to these points, apart from the general charge, established the following rules for the guidance of the jury:——
 
 
 115
 1. That the proprietors of a stagecoach do not warrant the safety of their passengers in the character of common carriers; and that they are not responsible for mere accidents to the persons of passengers, but only for the want of due care. (Jury so instructed in conformity to the first proposition submitted by the defendants below.)
 
 
 116
 2. That they do not warrant the safety of passengers; their undertaking as to them goes no further than this, that as far as human wisdom and vigilance can go, they will provide for the safe conveyance of their passengers. (Jury so instructed in conformity to the second proposition submitted by defendants below.)
 
 
 117
 3. If the jury believe that the driver was a person of competent skill, of good habits, and in every respect qualified and suitably prepared for the business in which he was engaged, plaintiff cannot recover unless they were clearly satisfied that, on this occasion the disaster was attributable to the fault of the driver, and not to the darkness of the night or other accidental cause, and that said accident would not have occurred but for the fault of the driver. (Jury so instructed in conformity to the seventh proposition submitted by the defendants below.)
 
 
 118
 The other propositions submitted are either inconsistent with what was conceded by the defendants themselves to be correct doctrine, or present parts of the subject in a detached, isolated form, calculated to mislead rather than enlighten the jury. Thus the third and fourth propositions ask the court to declare, that although the grossest negligence and incapacity existed on this particular occasion, yet if the driver's past conduct and character had been good, the proprietors were not liable. To have so held would have been in defiance of the decision of the Supreme Court in Stokes v. Saltonstall (13 Peters, 181), and would have been inconsistent with the court's assent to the defendant's seventh proposition, where good conduct on the particular occasion is conceded to be indispensable.
 
 
 119
 The fifth proposition presents a hypothetical statement of facts, and asks the court to instruct the jury that their existence would free the defendants from liability. It is denied that any right exists to force upon the court teasing and endless repetition of points favorable to one or the other side, where the law has been once correctly stated. But here, to have answered the question affirmatively would have been palpably wrong, for all the circumstances mentioned might be true, and yet the disaster have been occasioned by the intoxication of the driver.
 
 
 120
 So of the sixth proposition. It is to be borne in mind that the court instructed the jury that plaintiff could not recover, 'unless they were clearly satisfied that on this occasion the disaster was altributable to the fault of the driver, and not to the darkness of the night, or other accidental cause, and that said accident would not have occurred but for the fault of the driver.' The question, therefore, was fully answered, without entering into an idle and unseemly dissertation on the several stages of drunkenness.
 
 
 121
 Mr. Coxe, for plaintiffs in error, in reply and conclusion.
 
 
 122
 As to the errors in pleading which will lead to a reversal, see 9 Wheat. 720.
 
 
 123
 In this case there is no plea, and of course no replication; docket entries are no part of the record. 10 Ohio Rep. 200; 5 Peters, 254; 12 Wheat. 118, 119.
 
 
 124
 Mr. Coxe then went into a critical examination of the record.)
 
 
 125
 Whatever would be fatal in the court below is also fatal in the court above. 6 Cranch, 221; 15 Johns. 403.
 
 
 126
 If the first count be taken away, the second, standing by itself, does not afford sufficient foundation for the judgment. For example, it speaks of a 'day and year aforesaid,' but no day is named. It speaks of 'passengers in a coach,' but it is not averred to be a public coach. If the contract is to be implied, the fact that the stages were public must be averred. The declaration says that the defendants did not perform their duty. How? Was the plaintiff left behind? Or was the driver negligent? The second count does not say.
 
 
 127
 When the cause of action is inaccurately set out, the defect is cured by verdict; but a mere allegation of omission of duty is not enough. The case must show the facts. 2 Cranch, 389.
 
 
 128
 Title to property must be alleged. Stephens, 304; 2 Fenwick, 134.
 
 
 129
 The allegation in this case should have been, that the defendants were common carriers; there is none of a contract for hire. 2 Wash. 187; 2 New Hamp. R. 289.
 
 
 130
 Mutual promises must be averred. 1 Cain. 583; 5 Serg. & Rawle, 358.
 
 
 131
 Every material fact must be averred with precision. 9 Johns. 291.
 
 
 132
 Will the verdict cure these defects of pleading? The general rule is, that nothing is to be presumed after verdict, except what is stated in the declaration, or necessarily implied. 1 T. R. 145; 7 T. R. 521; 2 Tidd's Prac. 82.
 
 
 133
 It is not alleged here that the defendants were owners of the coach, nor that it was a public coach. Douglas, 679.
 
 
 134
 Whatever the law will not imply must be stated in the declaraton. 1 Chitty, 365, 368.
 
 
 135
 The declaration must aver a consideration, and here there is no averment of any contract whatever. 5 T. R. 150; Latch's Rep. 177.
 
 
 136
 Mr. Justice CATRON delivered the opinion of the court.
 
 
 137
 This cause comes here by a writ of error to the Circuit Court of the District of Western Pennsylvania. There is no bill of exceptions in the record; although instructions said to have been given by the court to the jury are certified up as part of the proceedings. These of course we cannot notice. Other supposed errors are therefore relied on as sufficient to reverse the judgment.
 
 
 138
 1. That the judgment below was rendered for the plaintiff, on the second count of the declaration; and it is insisted that this count is so defective, that no judgment could be rendered on it; and therefore on error the judgment must be reversed. If the assumption be true, the consequence must follow.
 
 
 139
 The second count refers to the first for the dates of the circumstances, and the injury complained of, and as no time is given in the first count, neither has this any.
 
 
 140
 The plaintiff in error having pleaded not guilty and gone to trial, the presumption is that the proof supplied the defective statement. Such, we suppose, is the uniform rule, where material dates are left blank.
 
 
 141
 2. It is insisted that the declaration does not set out the payment of any passage money; nor any promise or undertaking on the part of the defendants below to carry the plaintiff safely. The allegation is, that the plaintiff, at the special instance and request of the defendants, became and was a passenger in a certain coach, to be carried safely, &c., for certain rewards to the defendants; and thereupon it was their duty to use due and proper care, that the plaintiff should be safely conveyed. The breach is well assigned, as it shows the neglect and consequent injury sustained. No demurrer was interposed, for want of form; and this brings the 32d section of the Judiciary Act of 1789 to bear on the proceeding. Not guilty, was pleaded; a trial had on the issue, on which the jury returned a verdict in these words:—'Harriet Bishop v. Stockton, Moore, & Co. We, the jurors sworn and empanelled in this cause, do find for the plaintiff six thousand five hundred dollars, with costs of suit, this 25th day of November, A. D. 1843.' The verdict was received by the court, and stands recorded as found; and afterwards, on motion, it was amended so as to apply to the second count only.
 
 
 142
 Who the jurors were, or how many found the verdict, does not appear; nor does it appear that they were sworn to try the issue, further than the jury say in their verdict. Still we are bound to presume in favor of proceedings in a court having jurisdiction of the parties and subject-matter, that justice was administered in the ordinary form, when so much appears as is found in this imperfect record.
 
 
 143
 The declaration, plea, and finding must be taken together; and from these, we are bound, by the 32d section, above cited, to ascertain whether, according to the right of 'the cause and matter in law,' the plaintiff is entitled to her damages; and in so doing, defects of form must be disregarded. Why Congress so provided, in 1789, is obvious. No modes of proceeding were prescribed by the act, in civil causes, at common law, and the modes observed in the English courts left to apply as general rules. These were formal and technical; and forasmuch as by the 35th section all parties to causes in courts of the United States might plead and manage their own causes personally, if they saw proper, technicalities could not be required. That the practice under this privilege has not corresponded to the theory tolerating it may be conceded; yet we cannot for this reason disregard the clause covering jeofails, intended for its protection; and if proceedings, as recorded, in the courts in any part of the Union were as loose in 1789 as this record indicates them yet to be, in one circuit court at least, where the two acts of 1789 continue to govern, it must be admitted that Congress acted wisely in declaring that no litigant party should lose his right in law for want of form; and in going one step further, as Congress unquestionably has done, by declaring, that, to save the party's rights, the substance should be infringed on to some extent, when contrasted with modes of proceeding in the English courts, and with their ideas of what is substance.
 
 
 144
 According to 'the right of the cause and matter of law' appearing to us on the pleadings and verdict, we think the plaintiff is entitled to her damages, and that judgment below ought to have been rendered for her.
 
 
 145
 But the judgment there given is also assailed, and justly, as being less formal than what precedes it. It is either no judgment, or binding. If it amounts to nothing, then, by the 22d section of the Judiciary Act, no writ of error lay (as one can only be prosecuted on a final judgment), and the case must be dismissed for want of jurisdiction, and the plaintiffs in error be sent to the court below, to quash the execution. We think, however, there was a judgment on the verdict, that warranted an execution for the damages found; and consequently the prosecution of a writ of error. And this being so, for the reason above stated, such judgment must be affirmed.