RAILWAY OFFICIALS' & EMPLOYES' ACC. ASS'N v. WILSON.

(Circuit Court of Appeals, Eighth Circuit. February 13, 1900.)

No. 1,232.

1. PLEADING—FORMAL OBJECTIONS—WAIVER.

A technical objection to a petition, where the defect, if any, is merely formal, and could have been cured by amendment, cannot be considered when not made until after verdict.

2. TRIAL—DIRECTION OF VERDICT.

At the close of the evidence there is always a preliminary question for the judge before the case can properly be submitted to the jury, and that is, not whether or not there is any evidence, but whether or not there is any substantial evidence, upon which the jury can properly render a verdict in favor of the party who produces it. If there is no such evidence, it is the duty of the court to direct the jury to return a verdict against him.

3. APPEAL—REVIEW—QUESTIONS NOT PRESENTED TO TRIAL COURT.

A question not mentioned in the specification of errors in the original brief of a plaintiff in error, as required by the rules, and which was not presented to the trial court, will not be considered by the circuit court of appeals, which in an action at law is a court for the correction of errors only.

In Error to the Circuit Court of the United States for the Western District of Missouri.

George Hall and Guilford A. Deitch (O. G. Bain, Frank Hall, Fabius M. Finch, William R. Zulich, and John A. Finch, on the brief), for plaintiff in error.

E. M. Harber and Frank P. Sebree (A. G. Knight and H. C. McDougal, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. May Wilson, the defendant in error, was the wife of Stephen G. Wilson, who lived at Trenton, in the state of Missouri, and kept a restaurant in a building a few feet south of his residence. There was a small storeroom in the rear of his residence, to which there were two doors, that were usually kept closed, one opening into the diningroom, and the other upon a porch on the south side of the storeroom. On the night of March 25, 1897, Wilson was found dead in this storeroom, with two terrible wounds, one upon the back of his head, and the other on his forehead, either of which was sufficient to cause his death. He was a member of the Railway Officials & Employés' Accident Association, a corporation, and the plaintiff in error, and was insured by that association, according to the terms of a certificate of membership which he held, against accidental physical bodily injuries which should result in death within 90 days, for the benefit of his wife, the defendant in error, in the sum of $5,000. The certificate contained this provision:

"This insurance shall not cover disappearances; nor injuries nor death for which there is no visible external mark upon the body of the insured (the body itself, in case of death, not being deemed such mark); nor death or injury resulting from, or attributable partially or wholly, directly or indirectly, by or

in consequence of any of the following causes: * * * Injuries resulting from the intentional acts of the insured, or any other person, or death resulting from such acts, whether the insured or such other person be sane or insane (injuries inflicted by burglars, highwaymen, or thieves excepted)."

The defendant in error brought this action upon this certificate, and alleged that Wilson died from injuries inflicted upon him by violent and accidental means, and "that said injuries were inflicted by some burglar or burglars, highwayman or highwaymen, thief or thieves, unknown to this plaintiff, and were so inflicted by said burglar or burglars, highwayman or highwaymen, thief or thieves, unknown to this plaintiff, as aforesaid, then and there, on the 25th day of March, 1897, at the city of Trenton, Grundy county, state of Missouri, striking the said Stephen G. Wilson on the head and other vital parts of his body with an ax and other deadly weapons, and then and there, and with said ax and other deadly weapons, instantly kill him, plaintiff's said husband." The answer of the association contained a general denial of the averments of the petition relative to the cause of the death of Wilson; an averment that it was caused by a blow with a deadly weapon which was intentionally inflicted by some person, and which crushed his skull and instantly killed him; and an allegation that the certificate provided that the insurance which it evidenced should not cover injuries or death resulting from quarreling or fighting, and that Wilson was engaged in quarreling or fighting with some unknown person when he received the injuries which killed him. To this answer a reply was interposed, in which the defendant in error admitted that Wilson's death was caused by a blow intentionally inflicted upon him by some third person, and denied all the other allegations of the answer. The case was tried to a jury, and the only issue presented to them was whether Wilson was killed by a burglar, highwayman, or thief, or by some other person. They found this issue for the defendant in error, and returned a verdict in her favor, which was followed by a judgment against the association.

The first specification of error urged upon our consideration is that the defendant in error alleged in her petition that the injuries which resulted in the death of the assured "were inflicted by some burglar or burglars, highwayman or highwaymen, thief or thieves, unknown to the plaintiff," without alleging her belief of one alternative or the other, and her ignorance whether it was one or the other, in accordance with the provisions of section 2071 of the Revised Statutes of Missouri of 1889, which reads: "Facts stated may be in the alternative. Either party may allege any fact or title alternatively, declaring his belief of one alternative or the other, and his ignorance whether it be the one or the other." The point is too technical, and it comes too late for serious consideration. It was not presented by motion, demurrer, or objection to testimony before judgment. It was first made after the verdict by a motion in arrest of judgment. The petition contains all the substantial averments requisite to a good cause of action, and, if there is any defect in it, it is a mere formal one, which might have been immediately remedied by amendment, if it had been challenged by demurrer.

After verdict or judgment, an objection to a petition is tenable only

when the pleading fails to allege the substance or foundation of a good cause of action. Where the averments are simply informal, indefinite, or conclusions of law, objections to these defects are untenable and futile after the trial. Rev. St. § 954; Rev. St. Mo. 1889, § 2113; Less v. English, 85 Fed. 471, 476, 29 C. C. A. 275, 280, 56 U. S. App. 17, 26; Glaspie v. Keator, 56 Fed. 203, 5 C. C. A. 474, 12 U. S. App. 281; City of Plankinton v. Gray, 63 Fed. 415, 11 C. C. A. 268, 27 U. S. App. 321; Parks v. Turner, 12 How. 39, 45, 13 L. Ed. 883; Stockton v. Bishop, 4 How. 155, 11 L. Ed. 918; Gardner v. Lindo, 1 Cranch, C. C. 78, Fed. Cas. No. 5,231.

The next contention of counsel for the plaintiff in error is that the refusal of the court to grant their request at the close of the trial to instruct the jury to return a verdict for the association was error. Many authorities have been cited by counsel relative to the duty of the court when such a request is presented. The rule upon that subject is that at the close of the evidence there is always a preliminary question for the judge before the case can properly be submitted to the jury, and that is not whether or not there is any evidence, but whether or not there is any substantial evidence upon which the jury can properly render a verdict in favor of the party who produces it, and that, if there is no such evidence, it is the duty of the court to direct the jury to return a verdict against him. Commissioners v. Clark, 94 U. S. 278, 284, 24 L. Ed. 59; North Pennsylvania R. Co. v. Commercial Nat. Bank, 123 U. S. 727, 733, 8 Sup. Ct. 266, 31 L. Ed. 287; Railway Co. v. Converse, 139 U. S. 469, 11 Sup. Ct. 569, 35 L. Ed. 213; Laclede Fire-Brick Mfg. Co. v. Hartford Steam-Boiler Inspection & Insurance Co., 60 Fed. 351, 354, 9 C. C. A. 1, 4, 19 U. S. App. 510, 515; Gowen v. Harley, 12 U. S. App. 574, 585, 6 C. C. A. 190, 56 Fed. 973; Motey v. Granite Co., 74 Fed. 155, 157, 20 C. C. A. 366, 368, 36 U. S. App. 682, 686; Railway Co. v. Belliwith, 83 Fed. 437, 441, 28 C. C. A. 358, 362, 55 U. S. App. 113, 121. But it is equally well settled that it is only when the evidence leaves the material facts admitted or substantially undisputed, and only when these facts are such that reasonable men, in the exercise of an honest and impartial judgment, can fairly draw but one conclusion from them, that the court may properly withdraw the case from the jury. If the evidence relative to the material facts develops a substantial conflict, or from the admitted or established facts the unprejudiced minds of reasonable men may well draw different conclusions, it is the duty of the court to submit the issues to the jury. Railway Co. v. Jarvi, 53 Fed. 65, 70, 3 C. C. A. 433, 438, 10 U. S. App. 439, 451; Fuel Co. v. Danielson, 57 Fed. 915, 920, 6 C. C. A. 636, 640, 12 U. S. App. 688, 696; Drake v. Stewart, 76 Fed. 140, 143, 22 C. C. A. 104, 107, 40 U. S. App. 173, 178; Railway Co. v. Ives, 144 U. S. 408, 417, 12 Sup. Ct. 679, 36 L. Ed. 485; Railroad Co. v. Pollard, 22 Wall. 341, 22 L. Ed. 877; Railway Co. v. Price, 97 Fed. 423, 38 C. C. A. 239. The question here is therefore whether or not the undisputed facts established by the evidence were such that reasonable men, in the exercise of an honest and impartial judgment, could not fairly draw the conclusion that Stephen G. Wilson was killed by a burglar or a thief. Among the facts established at the trial were these: Wilson was a man of a quiet, peaceable dis-

position, who had no known enemies. He and his wife personally conducted their restaurant and waited upon their customers. He sometimes loaned small sums of money to those who desired to borrow them. In the storeroom where his body was discovered there were found, among other goods, some bottles of beer and some empty bottles. In an alley a few feet south of the storeroom an ax which belonged to Wilson, and which was usually kept by the woodpile in his back yard, was found smeared with blood, and on the porch a bloody stick of wood about 18 inches long was discovered. The doors of the storeroom were ordinarily kept closed. Wilson's body was found in this storeroom about 11:30 p. m., with his skull crushed in by three blows, two apparently made with the ax, and one with the stick. When his body was found, the door between the storeroom and the diningroom was found closed, and that which opened upon the porch was open a few inches. His clothes were undisturbed, and 66 cents in money and two gold or gold-filled watches were found upon his person. The defendant in error testified that she and her husband were sitting together by the stove in the restaurant about 10:30 p. m. on the night of the tragedy, when some one came to the back door of the building, and called her husband by his nickname, "Jim"; that he went out, and was gone about five minutes; that he then returned, went to the cash drawer, took from it a sack containing money which they kept there, dropped it back into the drawer, and went out again. Customers came in, and she waited upon them. Her husband did not return, and in about half an hour after he went out she went into the hall of their residence and called him. She heard a gurgling sound, but he did not answer, and she returned to the restaurant, and telephoned for the police. It was nearly half an hour before any one responded to her call, and meanwhile she did not alarm the neighbors, some of whom lived within a few feet, nor did she call a boarder, who was sleeping in one of the rooms in the second story of her residence, but when no one came for some time after her first call she telephoned again. The bookkeeper of Wilson testified that the cash in the money sack in the drawer was $15 short the next morning after the murder. There was other testimony in the case, but none which contradicted that which we have recited, none which pointed out more directly the perpetrator of the crime, none which tended more strongly to establish the plea of the association that Wilson was quarreling or fighting when he received the fatal blows. Was there no substantial evidence here that this man was killed by a burglar or a thief? Would all reasonable men, who exercised a fair and impartial judgment on the question, be compelled to find that he was not killed by a burglar or a thief? We do not doubt that this case was so mysterious, and this evidence so indirect and circumstantial, that it was fairly within the province of the jury to find that the assured was not killed by a burglar or a thief, but, after a careful consideration of all the evidence, we are unable to answer these questions in the affirmative. It is contended that the testimony of the defendant in error may be untrue, and the jury were undoubtedly at liberty to so find, but we are not, because it was not contradicted by other testimony, or by indisputable physical facts or laws,

and the jury, in the exercise of their undoubted prerogative, have found it to be true. Conceding her story to be true, the natural, yea, the irresistible, inference from the evidence is that the motive for the crime was the obtaining of money. The facts that Wilson sometimes had money and loaned it; that he went to the money sack just before he was killed; that the money in the sack was $15 short the next morning; and that he was found dead, without this money on his person,—tend to show that some one killed him to get it, and succeeded in doing so. Nor can we persuade ourselves to say that there was no substantial evidence that the perpetrator of this crime was a burglar or a thief. The fact that the $15 was gone under the peculiar circumstances of this case is persuasive evidence that it was stolen, and the facts that Wilson's dead body was found in a storeroom whose doors were ordinarily kept closed, and that the door to the porch was open, is substantial evidence, proper for the consideration of a jury, on the question whether or not the perpetrator of the crime opened it with the intent to commit a felony. All these issues were properly submitted to the jury.

Another specification of error is that the court told the jury that whether or not the cash account was $15 short the morning after the murder was a question for their consideration, and that "assuming, for the purposes of the case, that the cash account was fifteen dollars short, the question that you have to contend with when you retire to consider of your verdict is whether or not you can find that that fifteen dollars was taken out of the cash taken in on that day, by Mr. Wilson that evening." The criticism of this portion of the charge is that it diverted the attention of the jury from the real issue in the case, whether or not Wilson was killed by a burglar or a thief, and directed their attention to an immaterial matter not in issue. But it is a sufficient answer to this criticism to say that the fact, if it was a fact,—and there was very substantial and persuasive evidence to prove it,—that Wilson took the $15 from the money sack, and carried it out of the restaurant, just before he was killed, was a very material, nay, an essential, link in the chain of circumstances which led to the conclusion that he was killed by a burglar or a thief, and therefore the consideration of the question whether or not that fact existed was the consideration of a very essential part of the main issue before the jury.

Finally, it is contended that the association never was liable for the death of Wilson on account of injuries inflicted by a burglar, highwayman, or thief; that it was only liable for injuries so inflicted which did not result in death; and that this judgment should be reversed upon this ground. This contention is based on these words of the third paragraph on the back of the certificate (the italics are those of counsel for the plaintiff in error): "This insurance shall not cover * * * injuries resulting from the intentional acts of the insured, or any other person, or *death resulting from such* acts * * * (injuries inflicted by burglars, highwaymen, or thieves excepted)." It is said that the contract throughout makes a clear distinction between injuries and death, that the indemnity for the former was payable to the assured, and for the latter to his wife, and that the plain reading

of the policy excepts from the insurance death from injuries intentionally inflicted, whether by burglars, highwaymen, thieves, or other persons. This is, however, a new defense to this action, which is pleaded for the first time in the reply brief of the counsel for the plaintiff in error in this court. It was not pleaded in the answer. It was not suggested at the trial. It was not presented in the motion in arrest of judgment. And it was not mentioned among the errors upon which counsel claimed to rely, or in the argument which they filed in support of their claims, in the brief which they filed under the rules of the court. It is therefore not properly before this court, and we must decline to consider it, or to decide the question it presents, both because it was not presented in the first brief of counsel for plaintiffs in error, in accordance with rule 24 of this court (31 C. C. A. cxxvii., 90 Fed. cxxvii.), and because it was not presented to the court below. In an action at law this is a court for the correction of the errors of the court below exclusively. Questions which were not presented to or decided by that court are not open for review here, because the trial court cannot be guilty of error in a ruling it has never made, upon an issue to which its attention has never been called. Railway Co. v. Henson, 58 Fed. 531, 532, 7 C. C. A. 349, 351, 19 U. S. App. 169, 171; Schneider Brewing Co. v. American Ice Mach. Co., 77 Fed. 138, 149, 23 C. C. A. 89, 100, 40 U. S. App. 382, 403; Board v. Sutliff, 97 Fed. 270, 38 C. C. A. 167. The judgment below is affirmed.