Kahn v. Kuhn.

## KAHN v. KUHN.

1. **ATTACHMENTS:** *Consolidating debts due and not due.*
   A debt not due may be consolidated with one that is due, and an attachment be issued for the aggregate amount of both, where grounds of attachment applicable to either debt are alleged in the affidavit.

2. **WRITS:** *Not running in name of the State:  Amendment.*
   A writ not running in the name of the state is amendable, and should be amended by the court of its own motion, or be considered as amended.

APPEAL from *Miller* Circuit Court.
Hon. C. E. MITCHEL, Circuit Judge.

*Cohn & Cohn* for appellant.

The court erred in quashing the attachment. If it was defective in not running in the name of the State, the court should have amended it, or treated it as amended. *13 Ark., 414, 417.*

There is no law requiring separate affidavits or attachments on debts due and not due. *Secs. 437, 440 Gantt's Digest; Acts 1881, p. 9.*

Ordinarily if the pleadings substantially contain all that is required in attachment cases, it seems to be immaterial whether there be an extra affidavit or not. *30 Ark., 681; 32 Ib., 781, 783; 36 Ib., 648; 17 B. Mon., 324; 1 Met. (Ky.), 156; Ib., 470; Myers' Ky. Code, 448-9.*

By filing the traverse and pleading to the merits of the attachment, the defendant waived all defects. *Drake on Att., sec. 421.*

*Scott & Jones* for appellee.

The order of attachment did not run in the name of the State. (*13 Ark., 414; Const. 1874.*) It is true it might have been amended, but the appellant never asked leave

nor moved to amend, but on the contrary elected to stand on the writ.

2. A debt due and one not due cannot be joined or united in one attachment. The proceedings are different. *Gantt's Digest, secs. 388 and 437, 392, 439; Drake on Att., 4th ed., sec. 30; 7 Ga., 167; 1 Iowa, 546.*

EAKIN, J. Appellant, Kahn, on the sixteenth of December, 1882, began an action, by attachment, before a justice of the peace, against J. H. Kuhn. There was no written complaint. His affidavit based his claim upon an overdue acceptance of the defendant for $75.25, and upon an open account for $197.75, not due until the seventeenth of February, 1883, making an aggregate amount, which he makes oath he ought to recover, of $273 with interest. He alleged as grounds that defendant "has removed a material part of his property out of this State, not leaving enough therein to satisfy his creditors." Also, "that he was about to convey and otherwise dispose of his property with the fraudulent intent to hinder and delay his creditors," and also, "that he has conveyed and disposed of his property with a like intent." He added afterwards, by way of amendment, that defendant was at the time the affidavit was filed, and still is, a non-resident of the State.

An order of attachment issued with the venue at the head: "State of Arkansas, County of Miller," and beginning, "To any constable of Miller County." It ordered the attachment of goods sufficient to secure the debt of $273 with interest and costs of suit. Goods were attached and claimed by several interpleaders, who gave bonds and retained the property by them severally claimed.

Upon return of the attachment defendant moved to discharge it:

First—Because the affidavit showed the claim to be based on two debts, one of which was not due; and,

Second—Because it was otherwise defective and insufficient. Also, because the order did not specify the amount for which it was allowed by the justice, and because no complaint was filed. This motion was overruled.

The cause was tried by the justice after the account became due. He found for the plaintiff the whole debt, and sustained the attachment against the defendant and the interpleaders. Judgment was rendered accordingly, and the defendant, with the interpleaders, appealed to the Circuit Court.

There, upon motion renewed, the attachment was quashed, and judgment, by consent, was rendered against defendant on the acceptance alone. The plaintiff took a a bill of exceptions and appealed to this court from the judgment quashing the order of attachment.

The bill of exceptions shows that the whole attachment was quashed because it did not run in the name of the State, and further, as to so much of it as regarded the debt not due, because it was an attempt to unite an attachment for an undue debt with one for a debt due, thus making the affidavit defective. No appeal was taken by the interpleaders who occupy the position here of appellees, nor by the defendant on account of the judgment for the debt on the acceptance.

2. ATTACH-
MENTS:
Consoli-
dating due
and undue
debts.

The appeal raises this question of practice : Can an attachment issue in a suit for a debt due, which unites and consolidates with the due debt, another which is not due, including both in one gross amount. In other words can the two classes of attachments be joined and consolidated? The further question is raised as to the form of the writ of attachment.

Ordinarily, an attachment is incidental to a suit, and

ancillary to the satisfaction of any judgment which may be rendered. In this view it so depends upon a right of action that it cannot be issued where no right of action exists. The argument now made or suggested in support of the court below is, in effect, that the proceeding to secure an undue debt by attachment is exceptional and special. That it is not ancillary to any existing right of action, does not lie for the same causes with an attachment for an existing right of action, and is otherwise so distinctive in its features and purposes that it ought not to be united with an attachment under the general law. And that if it be now divided and quashed as to the debt not due, the affidavit of the amount due will be falsified, and the attachment will be excessive, so that it cannot be maintained as to the debt due, and that therefore all must be quashed.

We are not aware that this question has been ever before presented to this court, although we are advised that the practice of uniting debts due, and still to mature, in the same attachment is not unusual in the Circuit Courts, and common in the Circuit Court of the United States for this district. The practice requires to be definitely settled.

Under the general law, as fixed by the Code of 1868, an attachment in an action to recover money may be had upon any one of eight specified grounds. This applies to existing rights of action. The same Code, but slightly modified since, made separate provision for attachments where the claim might not be due.

These provisions, in both cases, are brought forward in Mansfield's Digest, sections 309, and from 361 to 364 inclusive. It is declared in the section last cited, that all the provisions regarding the proceedings in general cases of attachment shall apply, so far as applicable, to attach-

ments for debts not due. It does not appear even that the ancillary nature of attachments was lost sight of, or attempted to be changed; but rather that the Legislature in case of emergency, springing from the fault or fraud of the debtor, meant to accelerate the right of action, and to support it in cases where but for the imminent danger from fraud it would have been premature. Section 361 says: "In an action brought by a creditor against his debtor, the plaintiff may, before his claim is due, have an attachment," etc.

This view removes much of the distinctive character of these attachments, as separate classes of proceedings. There is a manifest intention to put them on the same footing as far as possible.

Only three grounds, however, are given for these attachments upon immature debts. All of them are expressly connected with the condition that the acts must be done with the fraudulent intent to cheat or defraud creditors, or hinder or delay them in the collection of their debts. They are:

First—Where the debtor has sold, conveyed or otherwise disposed of his property, or suffered or permitted it to be sold; or,

Second—Is about to make such sale or disposition; or,

Third—Is about to remove his property, or a material part of it, out of the State.

The first two are grounds for a general attachment. The third is not. To make it so in the case of actual or contemplated removal of property, it must be stated that the defendant is not leaving, or about to leave enough property in the State to satisfy the plaintiff's claim or the claim of defendant's creditors, but the fraudulent intent need not be alleged.

Thus it will be seen that there are two grounds common

Kahn v. Kuhn.

to what we may designate mature and immature attachments. That is, where the party has disposed of his property with fraudulent intent, or is about to do so. There is one ground for an immature attachment which will not support an attachment on a mature debt. That is where the defendant is about to remove his property or a material part of it out of the State with fraudulent intent, notwithstanding he may intend to leave in the State enough to satisfy his creditors.

All the material proceedings being the same, and directed to the same object, and the debts being such as might be joined after the acceleration of the right to sue as to some, and where grounds are alleged, as in this case, which would support an attachment on either debt, being common to both, then it is difficult to see why one attachment may not be made to suffice for all. It would certainly be highly inconvenient and onerons to compel the creditor to bring two suits, and levy separate attachments. We do not think it was bad practice, so far as the transcript shows in this case, or ground for quashing the writ.

It is true that some difficulties suggest themselves, *per contra*, but they are not insurmountable. It may be suspected, too, that courts often borrow trouble unnecessarily, and fail to do substantial justice, in the fear of spectres in the future, which would prove but mist, in the encounter. If a plaintiff should, as in this case, besides the common grounds, allege others which would only support an attachment on a mature debt, and upon controverting the grounds it should be found that the common grounds could not be sustained, and the others might, there might be some difficulty apprehended in splitting the attachment and holding it good *pro tanto*, as to the mature debt, and this may be urged as an objection to making the joinder at all, or to allowing the practice. The plaintiff, however, takes the

Kahn v. Kuhn.

responsibility of any trouble on this score, and his bond may compensate for an improper portion of an attachment or an excessive levy, without the necessity of quashing the attachment altogether.

2. WRITS: Amendable. We have dwelt upon this to settle the practice, and because it is presented by the record. The decisive action of the honorable circuit judge, in quashing the writ, was based upon the defect that it did not run in the name of the State.

It has been long settled law in this State that the provision in the Constitution that all writs shall run in the name of the State, did not prevent an amendment of a writ in this respect defective. (*Mitchell v. Conley*, *13 Ark.*, *4144*.) Formerly it seems that a motion was required for the purpose, but since the Code, in a case of manifest but not substantial error in its own process, a court should of its motion direct the amendment, or consider it as amended. The style of process is matter of form, worthy to be preserved as form, to keep alive the idea of State sovereignty. But it is not matter of substance.

By section 5080 of Mansfield's Digest, courts may at any time amend any pleading or proceeding by correcting a mistake in any respect. It might be well enough in many instances, before correcting a pleading, to require a motion for the purpose, for parties have the right to frame their own pleadings and to rest upon them. But the framing of process is the act of the court or clerk, and the court should not wait to be moved in order to correct an obvious mistake, which has not been misleading or otherwise detrimental. The object of the constitutional provision is manifestly political rather than judicial. It is to keep alive the idea that all the powers of government, judicial, as well as legislative and executive, emanate from the sovereignty of the people, who constitute the State,

and it is the duty of the court, of its own motion, to preserve the form, or at least treat the process as if amended.

The quashing of the attachment necessarily superseded any trial upon the issues made by controverting its grounds, and the court moreover seems to have considered the claim on the account to have passed off with it. The cause was heard upon the acceptance alone, and as to that was determined in plaintiff's favor as an ordinary suit. If the motion to quash had been overruled, the proper proceeding would have been to determine the issues controverting the grounds of the attachment, and if that had been sustained in both aspects, then to have tried the issues, as to both claims upon the merits *de novo*.

For error in quashing the attachment, reverse the judgment and remand the cause, with directions to overrule the motion for that purpose, and for further proceedings in accordance with law and this opinion.