PEOPLE'S SAV. BANK & TRUST CO. v. BATCHELDER EGG CASE CO.

*(Circuit Court of Appeals, Eighth Circuit. July 5, 1892.)*

No. 76.

1. ATTACHMENT—ISSUANCE—DUTIES OF CLERK.
Gantt's Dig. Ark. § 438, provided that an attachment for a debt not due might be granted by the court in which the action was brought, or by the judge thereof, or some circuit judge. Section 439 required that the order of the court or judge granting the attachment should specify the amount for which it was allowed. By the act of March 18, 1881, (Mansf. Dig. § 362,) section 438 was amended by conferring on the clerk of the court the same authority to grant such an attachment as that possessed by the court or judge. *Held* that, the purpose of the requirement that the order of the court or judge should specify such amount being that the clerk might know what sum to insert in the attachment, it was not necessary that the clerk, when the attachment was allowed by himself, should make an order specifying the amount for which it was allowed.

2. SAME—MANSFIELD'S DIGEST, §§ 363, 364.
In the subsequent compilation of the statutes of Arkansas known as "Mansfield's Digest," the word "clerk" is inserted in the former provision of Gantt's Dig. § 439, so as to require that the order of the court, or the clerk or judge, granting the attachment, shall specify the amount for which it is allowed, (Mansf. Dig. § 363,) and provides (section 364) that "the order of attachment, as granted by the court, or the clerk or judge," shall not be issued by the clerk until a bond has been filed. *Held*, that the word "clerk" was inserted in these two sections (Mansf. Dig. §§ 363, 364) without legislative sanction, unless authorized by a proper construction of the act of March 18, 1881, (Mansf. Dig. § 362,) and that such construction was not authorized, as it would be a vain and unnecessary proceeding to require the clerk, when he issues an attachment, to certify to himself the amount for which he has allowed it.

3. SAME—TECHNICAL DEFECTS.
Even if it be conceded that the statute does require the clerk to first make such an order, an attachment issued by him without it would not be invalid, since, under the rulings of the state supreme court, the proceeding by attachment, like any other civil action, may be amended in matter of substance, as well as of form, at every stage of the case, and all errors or defects not injuriously affecting the substantial rights of the defendant will be disregarded.

4. SAME—CLERK—OFFICIAL ACTS OUTSIDE HIS OFFICE.
Mansf. Dig. § 547, provides that the county clerk shall keep his office at the county seat, shall keep therein the records, seals, and property belonging to his office, and shall there transact his business. *Held*, that this does not render void official acts performed by the clerk away from his office, such as issuing a writ of attachment and affixing thereto his official seal.

5. SAME.
Mansf. Dig. Ark. § 4967, provides that a civil action is commenced by filing in the office of the clerk a complaint, and causing a summons to be issued thereon. Section 5308 declares that no summons or order for a provisional remedy shall be issued by the clerk in any action before the complaint or petition "is filed in his office." *Held*, that this does not require that the complaint shall be actually lodged within the walls of the office before the issuance of the writ, and where the clerk, outside of his office and at the office of an attorney, receives and stamps as "Filed" a com-

plaint, affidavit, and bond for an attachment, and thereupon signs and attests the writ with his official seal, delivers the same to the marshal, and then immediately takes the papers to his office, the attachment is valid; especially as section 5083 declares that the court must, at every stage of the proceedings, disregard any error or defect which does not affect the substantial rights of the parties.

6. SAME.
   Even if it be conceded that the writ was prematurely issued, the service and levy thereof became effectual and binding against the defendant, and all others who acquired no rights before the papers were actually lodged in the office.

In Error to the Circuit Court of the United States for the Eastern District of Arkansas.

Action commenced by attachment by the People's Savings Bank & Trust Company against the Batchelder Egg Case Company, in the circuit court of Arkansas, and subsequently removed by defendant to the United States circuit court. That court declared the writ of attachment void, and rendered final judgment thereon against the plaintiff. Plaintiff brings error. Reversed.

Statement by CALDWELL, Circuit Judge:

On the 16th of August, 1890, the plaintiff in error brought suit by attachment against the defendant in the circuit court of Phillips county, Ark., for $2,500, upon an indebtedness not then due. The defendant removed the case into the circuit court of the United States upon the ground of diverse citizenship. The Revised Statutes of Arkansas provide that an attachment may issue for a debt not due, and prescribe the mode of suing out such an attachment. As originally enacted, the statute provides as follows:

"Sec. 438. The attachment authorized by the last section [for debt not due] may be granted by the court in which the action is brought, or by the judge thereof, or any circuit judge in vacation, where the complaint, verified by the oath of the plaintiff, shows any of the grounds for attachment enumerated in that section, and the nature and amount of plaintiff's claim, and when the same will become due. Sec. 439. The order of the court or judge granting the attachment shall specify the amount for which it is allowed, not exceeding a sum sufficient to satisfy the plaintiff's claim and the probable costs of the action. Sec. 440. The order of attachment, as granted by the court or judge, shall not be issued by the clerk until there has been executed in his office such bond on the part of the plaintiff as is directed in cases of attachment, and the provisions of this chapter, so far as they are applicable, shall apply to attachments for debts not due." Sections 438–440, Gantt's Dig. St. Ark.

By an act approved March 18, 1881, p. 99, it was enacted as follows:

"Section 1. That section 438 of Gantt's Digest be amended so as to read as follows: The attachment authorized by the last section may be granted by the court in which the action is brought, or the clerk or judge thereof, or any circuit judge in vacation, where the complaint, verified by the oath of the plaintiff, his agent or attorney, shows any of the grounds of attachment enumerated in that section, and the nature and amount of plaintiff's claim, and when the same will become due."

The two succeeding sections were not amended, but in the compilation of the statutes of the state made in 1884, and known as "Mansfield's Digest," the words "or clerk" appear—whether from clerical misprision or otherwise is not stated—after the word "court" in those sections. Mansf. Dig. St. Ark. §§ 362–364. In the circuit court the defendant

moved to quash the attachment upon three grounds: (1) That the order of attachment was issued before any order had been made by the clerk or any other officer authorized by law to make it, specifying the amount for which the attachment was allowed, as required in the case of an attachment for a debt not due; (2) that the clerk had no authority to make an order for an attachment for a debt not due, because it was a judicial, and not a ministerial, act; (3) that the order of attachment was signed and sealed by the clerk, and delivered to the sheriff, at the office of an attorney interested adversely to the defendant, and half a mile distant from the office of the clerk in the court house, and before the complaint, affidavit, and bond were filed in the clerk's office. The court sustained the first ground, and overruled the second. Issue was taken on the third, and the court made the following special findings of facts and declarations of law:

"That on the evening of the 16th day of August, 1890, at about 7:30 P. M., the deputy clerk, whose name is signed to the process herein, was called upon at his residence in the city of Helena by the cashier of the People's Savings Bank & Trust Company, and requested to go to the courthouse and get the official seal of the circuit court, and come with the same to the law office of John J. and E. C. Hornor, where parties were preparing papers in certain actions which it was desired to bring in the court of which he was deputy clerk; that the said deputy accordingly went to the courthouse, and got the seal of his said office, and took the same with him to the office of said Hornors, which is about one half mile distant from the clerk's office, and in the city of Helena; that upon arriving at the said office he found present the attorneys for the plaintiff, and R. C. Burke, a deputy sheriff of Phillips county; that before the arrival of the said deputy clerk, or shortly thereafter, the attorneys for the plaintiff prepared, on blanks procured from some one not known to the deputy clerk, the writs of summons and attachment now on file in this action; that the original complaint, affidavit, and bond found in the record of this cause were presented to the said deputy clerk in the office of the said Hornors, and he then and there placed the filing mark now appearing on said complaint, affidavit, and bond, and approved the said bond, and immediately thereafter, at said office, signed said writs of summons and attachments, and attested the same with the official seal, and handed the same to R. C. Burke, then present in said office as deputy sheriff, for service according to the command thereof; that Mr. Burke immediately indorsed on said writ of attachment the time at which the same came to his hands, and then proceeded to execute the same; that shortly thereafter the deputy clerk left the office of said Hornors, and within fifteen minutes after leaving deposited said complaint, affidavit, and bond, together with his official seal, in the office of the clerk of the circuit court of Phillips county courthouse; that Phillips county has a courthouse at Helena, Ark., and in said courthouse there is set apart to and occupied by the clerk of the circuit court an office, in which he keeps the records pertaining to his official station, and that he had such office at the time of the doing of the things hereinabove stated and found; that the hour at which the cashier called upon the deputy was later than the usual hours for keeping open the clerk's office; that the clerk and his deputy had left the office, and the deputy was found at his residence; that the local manager and agent of the defendant corporation was present in the said office of the said Hornors when the deputy sheriff received the writs, and the said deputy sheriff at once made service of each of said writs by delivering a copy thereof to said agent in said office, and before the said deputy clerk had left the said office with the papers in this case and his seal."

Upon the foregoing facts the court declared the law to be "that the writ or order of attachment herein is void for having been issued contrary to law, in that it was so issued by the clerk before there had been filed in his office the plaintiff's complaint, affidavit, and bond; to which declaration of law the plaintiff at the time excepted." The plaintiff duly excepted to the rulings of the court, and, final judgment having been rendered against it on the attachment, it sued out this writ of error.

*Greenfield Quarles, John I. Moore, John J. Hornor, E. C. Hornor, M. L. Stephenson,* and *J. Trieber,* for plaintiff in error.

*James P. Clarke,* for defendant in error.

Before CALDWELL and SANBORN, Circuit Judges, and SHIRAS, District Judge.

CALDWELL, Circuit Judge, (*after stating the facts.*) By the provisions of section 438, Gantt's Dig. St. Ark., an attachment for a debt not due had to be granted by the court in which the action was brought, or by the judge thereof, or some circuit judge; and by the provisions of section 439 the order of the court or judge granting the attachment had to specify the amount for which it was allowed. Subsequently section 438 was amended (act approved March 18, 1881, p. 99) by conferring on the clerk of the court the same power and authority to grant an attachment for a debt not due that was conferred on the court or judge by the original act, and the attachment in this case was allowed and issued by the clerk under the authority of section 438, as amended by the act of 1881, and which is now section 362 of Mansfield's Digest of the Statutes of Arkansas. One ground relied on to support the judgment of the court below, quashing the attachment, is that the clerk did not, before issuing the order of attachment to the sheriff, make and sign a separate order directed to himself, specifying the amount for which he had allowed the attachment. The law does not require this to be done when the clerk allows and issues the attachment himself. If the order for the attachment is granted by the court or judge, the statute requires that it shall specify the amount for which it is allowed. This requirement is necessary in order that the clerk may know what sum to insert in the attachment which he issues to the sheriff, but when the attachment is allowed by the clerk himself, and the order of attachment is duly issued by the clerk to the sheriff, he is not required to issue another order, directed to himself, specifying the amount for which he has allowed the attachment. It is true, however, that in Mansfield's Digest of the laws of that state the word "clerk" is inserted in connection with that of "judge," in sections 363 and 364, in a way that seemingly requires him to do this very thing; and the contention of the defendant in error is that the clerk, like the court or judge, must, when he allows an attachment for a debt not due, make an order specifying the amount for which it is allowed, in addition to the order of attachment which he issues to the sheriff. How the word "clerk" came to be inserted in the two sections last named does not appear. It is undoubtedly there without legislative sanction, unless a proper construction of the

act of 1881 puts it there, and it seems clear that that act can have no such effect. That act confers on the clerk, equally with the court or judge, authority to issue an attachment for a debt not due. It does no more. It does not require the clerk, when he allows and issues an attachment, to certify to himself the amount for which he has allowed it. That would be a vain and unnecessary proceeding. The act, as passed by the legislature, imposed no such duty on the clerk, and we may add that under the decisions of the supreme court of Arkansas relating to the validity of attachment proceedings, if it had contained such a superfluous requirement, the failure to comply with it would not have affected the validity of an attachment otherwise duly issued. It is the settled doctrine of the supreme court of Arkansas that the proceeding by attachment, like any other civil action, may be amended in matter of substance as well as form at every stage of the case, and that every error or defect in the proceedings which does not injuriously affect the substantial rights of the defendant in the attachment will be disregarded. *Rogers* v. *Cooper*, 33 Ark. 406; *Weil* v. *Kitlay*, 40 Ark. 528; *Sannoner* v. *Jacobson*, 47 Ark. 31, 14 S. W. Rep. 458; *Kuhn* v. *Kuhn*, 44 Ark. 404; *Fortenheim* v. *Claflin*, 47 Ark. 49, 14 S. W. Rep. 462.

Cases may be found in other jurisdictions holding that an attachment proceeding is a harsh and oppressive remedy, bordering on a criminal prosecution, and applying to it such strict and technical rules of practice and decision as to practically destroy the remedy. But the doctrine of these cases meets with no favor in the supreme court of Arkansas. In that court a suit by attachment is regarded like any other civil suit authorized by law, and the same liberal and enlightened rules of practice that obtain in other cases are applied to attachment suits. Formal and technical defects are disregarded, and the case tried on its merits. The decisions of the supreme court of a state, construing and applying its attachment laws, are rules of decision in this court, in like cases, coming from that state.

It appears from the special findings of facts that, after the usual office hours, the clerk, taking with him the seal of the court, proceeded to a law office at the seat of justice of the county, some half a mile from the courthouse, where he kept his office, and there received the complaint, affidavit, and bond, and marked the same "Filed," and approved the bond, and then filled up and signed and sealed the order of attachment, and delivered the same to the sheriff. It will be observed that every paper necessary to a valid attachment was duly executed and placed in the hands of the clerk, and by him marked "Filed" before the order of attachment was issued, and that the order itself was in proper form, and duly signed and sealed. As soon as the clerk could walk from the law office where this was done to his own office, a distance of half a mile, the complaint and other papers were placed in the proper pigeonhole in his office. Upon these facts it is urged that the order of attachment is void; and this contention is rested on the following sections of Mansfield's Digest of the Statutes of Arkansas:

"Sec. 547. He [the clerk] shall keep his office at the seat of justice of the county of which he is clerk, and there keep the records, papers, seals, and property belonging to his office, and shall there transact his business." "Sec. 4967. A civil action is commenced by filing in the office of the clerk of the proper court a complaint, and causing a summons to be issued thereon." "Sec. 5308. No summons or order for provisional remedy shall be issued by the clerk in any action before the plaintiff's complaint or petition therein is filed in his office."

It is undoubtedly the duty of the clerk under section 547 to keep an office at the seat of justice, and transact his business there. But neither this section, nor any other provision of the statute, declares that every official act of the clerk not performed within the four walls of his office shall be void. To place such a construction upon this statute would be productive of the most injurious consequences to the public. It is common practice for the clerk to perform official acts and affix his seal to documents outside of his office. He frequently takes acknowledgments of conveyances and powers of attorney, and signs and seals the same, outside of his office. Are all such acknowledgments void? The clerk should be in his office during the business hours ready to transact the public business, but it is perfectly competent for him to perform such official acts as were performed in this case elsewhere than in his office. County bonds of a county in Iowa, which were signed by the county judge and the seal of the county affixed thereto by him in New York city, were held to be valid securities. *Lynde* v. *Winnebago Co.*, 16 Wall. 6. In the case last cited the officer was beyond his territorial jurisdiction when he signed the bonds and affixed the seal of the county thereto, but in the case at bar the acts of the clerk were performed at the seat of justice of his county. If a clerk neglects to keep an office at the seat of justice of his county, or having an office there he transacts business wherever in the seat of justice of the county he finds it convenient to do so, he may be answerable to the public for not keeping a regular office and transacting his business there, but his official acts are not void because he performs them in some other office at the county seat. In Arkansas the clerk is *ex officio* recorder. If, at the close of business hours, he should take the record of deeds from his office to his residence, and there record deeds, would the record of such instruments be a nullity, or would the records of court entered under similar conditions be void? He is undoubtedly under obligations to the public to keep an office at the county seat, and there transact his business; but a breach of this duty does not affect the validity of the official acts he performs for the citizen.

It is next contended that the attachment was void because the order of attachment was placed in the hands of the marshal by the clerk before the complaint, affidavit, and bond had been "filed in his office," as required by section 5308. There are several answers to this contention. Under this section the issuing of the summons or order in a case must not precede the filing of the complaint or petition upon which it is founded. The requisite complaint or petition must be filed with the

clerk before that officer can issue process. This is a reasonable and proper requirement. The essential thing to be done before process can rightfully issue is to lodge with the clerk a proper complaint. It is this, and not the place where this is done, or the particular room in which the complaint is deposited, that confers on the clerk authority to issue the process. When, therefore, a plaintiff delivers to the clerk a complaint or petition which entitles him to a summons or order for a provisional remedy, and the clerk puts his file mark upon it, and retains the custody of it, and issues the proper process upon it, such process is not void, as against the defendant, because at the time of its issue the clerk had not placed the complaint or petition in his office. It often occurs that complaints or petitions for provisional remedies are delivered to the clerk in the court room, and process at once issued upon them. Are the proceedings in such cases void because the complaints were not carried by the clerk and placed in his office before he issued process upon them? It not unfrequently occurs that the court room and the clerk's office are in different buildings more or less distant from each other. Must the clerk in such cases, before issuing process upon petitions filed with him in the court house, leave his desk in the court room, and go to his office for the sole purpose of placing therein the petitions? Such a literal construction of the statute would be too narrow and technical for the practical and business methods that should obtain in the administration of the law. It would serve no useful purpose, but would frequently produce the most mischievous consequences.

A statute of Wisconsin provided that "an attempt to commence an action shall be deemed equivalent to the commencement thereof, where the summons is delivered with the intent that it shall be actually served to the sheriff or other proper officer of the county in which the defendants, or one of them, usually or last resided." The question arose under this statute whether it was essential to the commencement of an action that there should be an actual manual delivery of the summons "to the sheriff or other proper officer," and the court said:

"In order to come within the second sentence of that section requiring the summons to be delivered with 'the intent that it shall be actually served to the sheriff or other proper officer,' it does not appear to us to be necessary that there should be a manual delivery of the summons to the officer in person. It would be sufficient, for instance, if the attorney left it on the marshal's desk, or other place in the marshal's office, so that the marshal would understand that it was left with him for service. It would be equally sufficient if the attorney, or the clerk acting by his direction, placed the summons in a box in the clerk's office designated by the marshal with the clerk's assent as a place where process to be served by him should be deposited, and from which he usually took them daily."

And it was held that depositing a summons in a box in the clerk's office, so designated, was tantamount to delivering the same to the sheriff or other proper officer in person. *Bank* v. *Eldred*, 130 U. S. 693, 9 Sup. Ct. Rep. 690.

The defendant was not prejudiced in any manner by the fact that the complaint, affidavit, and bond were not within the four walls of the

clerk's office at the instant the order of attachment was issued and placed in the sheriff's hands.   Section 5083 of Mansfield's Digest of the Statutes of Arkansas provides that "the court must in every stage of the action disregard any error or defect in the proceedings which does not affect the substantial rights of the adverse party, and no judgment shall be reversed or affected by reason of such error or defect." Under this section, the irregularity, if any, in the clerk issuing the order of attachment after the complaint, bond, and affidavit were filed with him, but before he had placed them in his office, must be disregarded.   There is another view proper to be considered, which is equally fatal to the defendant's contention.   Let it be conceded that the order of attachment was placed in the hands of the sheriff prematurely on account of the complaint, affidavit, and bond not then being in the clerk's office, still these papers had all been duly executed and filed with the clerk, and were actually placed in the clerk's office a few minutes afterwards, and from that time certainly the order of attachment, and the service thereof, and the levy made thereunder, became effectual and binding for all purposes against the defendant, and all others who acquired no rights before the papers were thus filed in the clerk's office.   *Small* v. *McChesney*, 3 Cow. 19; *Clute* v. *Clute*, 3 Denio, 263; *Clute* v. *Clute*, 4 Denio, 241.   The judgment of the court below is reversed, and the cause remanded, with instructions to grant a new trial.