## ENGSTROM v. CANADIAN NORTHERN RY. CO.

(Circuit Court of Appeals, Eighth Circuit. July 9, 1923.)

No. 6324.

1. **Removal of causes** ⊚⇒89(1)—**Delivery of petition to clerk of state court outside his office held sufficient.**

Delivery of pleading or other instrument, such as petition for removal of cause to federal court, to clerk of Minnesota district court, for filing, outside of his office, when accepted by him, *held* sufficient, though he failed to indorse it at the time.

2. **Removal of causes** ⊚⇒90—**Order of removal made by judge in another county of district held valid even if clerk not then present.**

Under Judicial Code, § 29 (Comp. St. § 1011), requiring petition for removal to be filed at or before time defendant is required to plead, order of removal made by judge of Minnesota district court in county other than that in which action was pending on petition there presented to him would be valid even if clerk of court for county in which action was pending had not then been present.

3. **Trial** ⊚⇒143—**Case must be submitted to jury when there is conflicting evidence.**

If there is any substantial evidence which, given its strongest probative effect, would justify jury in returning verdict for party against whom request for directed verdict is made, or, in other words, if testimony is conflicting and reasonable men may differ on the issues involved, the case must be submitted to jury.

4. **Trial** ⊚⇒139(1)—**Duty to direct verdict when contrary verdict would have to be set aside.**

If the entire testimony is such that verdict in favor of party against whom directed verdict is requested would have to be set aside, there being no substantial conflict, it is court's duty to direct verdict.

5. **Railroads** ⊚⇒348(8)—**Evidence held to show occupants of automobile could have seen train.**

Evidence *held* to show that driver of automobile and one riding with him would have seen moving train in time to prevent collision if they had stopped to look and listen, and that if they had heeded brakeman's yells and signals the accident could not have happened.

6. **Railroads** ⊚⇒327(12)—**Occupant of automobile held negligent.**

Where one riding in automobile was in position to see danger from approaching train and made no objection to driver's attempt to cross in front of it, he was negligent to the same extent as the driver.

In Error to the District Court of the United States for the District of Minnesota; Andrew Miller, Judge.

Action by Ole Engstrom, as administrator, etc., against the Canadian Northern Railway Company. Judgment on a directed verdict for defendant, and plaintiff brings error. Affirmed.

F. A. Grady, of Crookston, Minn. (Alexander Fosmark, of Crookston, Minn., on the brief), for plaintiff in error.

Arnold L. Guesmer, of Minneapolis, Minn. (Hector Baxter and Brown & Guesmer, all of Minneapolis, Minn , on the brief), for defendant in error.

Before STONE and KENYON, Circuit Judges, and TRIEBER, District Judge.

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

TRIEBER, District Judge. The plaintiff, as administrator of the estate of Andrew Anderson, deceased, instituted this action in a district court of the Fourteenth judicial district for the county of Roseau, state of Minnesota, against the defendant in error and the Minnesota & Manitoba Railroad Company to recover damages by reason of injuries received by his intestate resulting in his death, caused by the defendant's negligently striking an automobile in which he was riding as a guest of one Nels Engstrom. The particular facts set out in the complaint are:

"That the said Nels Engstrom attempted to drive said automobile, in which this plaintiff's decedent and the others were riding, over said crossing on said Lake street at said time, as aforesaid, and that this plaintiff's decedent was wholly unaware and unmindful of the approach of defendant's railway train which then and there collided with said automobile and killed and injured the occupants thereof, as hereinbefore described and set forth; that the defendant railway company then and there carelessly and negligently, through one of its employed brakemen, signaled a string of automobiles, including the car owned, controlled, and driven by the said Nels Engstrom, and in which this plaintiff's decedent was then riding as a gratuitous passenger, to cross said railway crossing, near by which defendant's railway train was then standing motionless, and that thereupon and in reliance and assurance from defendant railway company's brakeman, that said railway train would remain motionless until defendant's decedent had crossed said railroad track in said automobile, and over which car this plaintiff's decedent had no control, power of supervision, the said defendant's decedent, Nels Engstrom, carelessly and negligently attempted to cross said railroad crossing with said automobile and occupants, and while so attempting to cross said railroad crossing, the defendant railway company, carelessly and negligently and without giving any warning by way of whistle, bell, or otherwise to plaintiff's decedent or the other occupants of said car, backed said train into said automobile, killing this plaintiff's decedent, as hereinbefore set (forth; that the defendant railway company then and there carelessly and negligently failed and omitted to have any proper sign or warning at said railway crossing and negligently failed and omitted to keep or maintain any gates, flagman, a system of automatic bells, or some other appliances to warn travelers of the approach of trains at this busy and extensively traveled street crossing; that said defendant railway company failed and neglected to exercise any care or precaution for the safety of plaintiff's decedent, and that said defendant railway company then and there ruthlessly and wantonly killed and destroyed this plaintiff's decedent by backing said train over said crossing without first ascertaining that this plaintiff's decedent had passed over said crossing, and while the defendant's decedent, Nels Engstrom, was in the act of driving his car over said crossing, as aforesaid, and otherwise as hereinbefore set forth."

In due time the defendant in error, hereafter referred to as the Canadian Railway Company, presented its petition for removal of the cause to the federal court, and the petition was granted. The petition and bond for removal were presented to the judge of the state district court on April 28, 1922, at Crookston, Polk county, one of the counties of the Fourteenth judicial district of Minnesota, where the district judge was at that time, and the clerk of Roseau county also. The petition and bond were handed to the clerk of Roseau county at the time, but by him not placed in his office in Roseau county until the next day, April 29, 1922.

291 F.—47

The petition for removal alleged that the plaintiff was at the time of the institution of the suit, and at the time of the presentation of the petition for removal, a citizen of the state of Minnesota, and the defendant Canadian Railway Company at all times a corporation existing under and by virtue of the laws of the Dominion of Canada; that the defendant Minnesota & Manitoba Railroad Company is a Minnesota corporation, which had no connection whatever with the cause of action, but was joined as a defendant solely for the fraudulent purpose of preventing a removal of the cause to a court of the United States, by the petitioner. The order for removal was granted by the judge of the state court. After the transcript of the cause had been filed with the court below, the plaintiff filed a motion to remand it to the state court. The record fails to show the grounds upon which the motion was based, but on the argument it was admitted that the sole ground for remanding it was that the petition and bond and the order for removal were made in Polk county and handed to the clerk elected in Roseau county, while in Polk county. There was no denial of the allegation in the petition that the Minnesota & Manitoba Railroad Company was joined solely for the fraudulent purpose of preventing a removal of the cause to the federal court. The motion was denied and exceptions saved.

After answer there was a trial to a jury, and on motion of the defendant the court directed a verdict for the defendant and an exception to the action of the court saved.

There are numerous assignments of error, but it is only necessary to determine two:

(1) Did the court err in denying the motion to remand the cause to the state Court?

(2) Did the court err in directing a verdict for the defendant?

[1] 1. In Minnesota a district court covers a number of counties, one judge acting for all the counties in the district. The clerk, although elected for each county, is the clerk of the district court for the district. Article 6, § 13, of the Constitution of the state provides:

"There shall be elected in each county where a district court shall be held, one clerk of said court."

It is the common practice of the district courts in that state, for the clerk elected in one county to attend courts in other counties of the district in purely formal matters presented to the judge of the district court, while in another county, than the one in which the clerk was elected. The delivery to the clerk for filing a pleading or other instrument outside of his office, accepted by him for that purpose, is sufficient, even if he fails to indorse it at the time. State v. Crosby Park Land Co., 63 Minn. 205, 207, 65 N. W. 268; People's Saving Bank & Trust Co. v. Batchelder Egg Case Co., 51 Fed. 130, 135, 2 C. C. A. 126, 131, decided by this court. In that case, which arose under the statutes of the state of Arkansas, which require the clerk of the circuit court of each county to keep an office at the seat of justice of the county and transact his business there, complaints and affidavits for attachments were handed to him at a law office, some distance from the courthouse, and he there issued the writs and later placed the com-

plaints and affidavits in his office. This court held that this was sufficient. The court said:

"It is undoubtedly the duty of the clerk under section 547 [of the Statutes of Arkansas] to keep an office at the seat of justice, and transact his business there. But neither this section, nor any other provision of the statute, declares that every official act of the clerk not performed within the four walls of his office shall be void. To place such a construction upon this statute would be productive of the most injurious consequences to the public. It is common practice for the clerk to perform official acts and affix his seal to documents outside of his office. He frequently takes acknowledgements of conveyances and powers of attorney, and signs and seals the same, outside of his office. Are all such acknowledgments void? The clerk should be in his office during the business hours ready to transact the public business, but it is perfectly competent for him to perform such official acts as were performed in this case elsewhere than in his office."

In Lynde v. Winnebago County, 16 Wall. (83 U. S.) 6, 21 L. Ed. 272, bonds of a county in Iowa were signed by the officer and the seal of the county affixed in another state and the validity of the bonds was sustained.

[2] But even if the clerk of Roseau county had not been present when the petition was presented to the judge and the order of removal made in Polk county, the order would be valid. In Remington v. Central Pacific R. R. Co., 198 U. S. 95, 99, 25 Sup. Ct. 577, 579 (49 L. Ed. 959), it was held:

"The presenting of the petition to a judge in chambers, and the filing of it in the state court, satisfied the statute."

Any other rule would frequently prevent a removal. Section 29, Judicial Code (Comp. St. § 1011), requires the petition for removal to be filed at or "before the defendant is required by the laws of the state or the rule of the state court in which such suit is brought to answer or plead to the declaration or complaint of the plaintiff," and he must file a certified copy of the record in the District Court of the United States "within thirty days from the date of the filing of the petition."

Many of the state courts only meet twice a year for a short session, but under the laws of the state or the rule of the state court, the defendant may be required to plead within a certain number of days after having been served with the summons. In such a case, the petition for removal must necessarily be presented and acted on by the state court or judge at once, in order to enable the defendant to file the transcript in the national court to which the cause has been removed within the 30 days after the filing of the petition, or the cause will necessarily be remanded. As most of the judicial districts of the state include a number of counties, the judge of the district is frequently absent from the county in which the action, sought to be removed, is pending. How can, under such condition, a cause be removed, unless the petition can be presented to the judge in vacation, wherever he happens to be within the district?

The motion to remand was correctly denied.

2. Did the court err in directing a verdict for the defendant?

[**3, 4**] It is unnecessary to cite authorities to the well-established rule of law that, if there is any substanttial evidence, which, given the strongest probative effect, would justify a jury to return a verdict for the party, against whom the request for a directed verdict is made, it is the duty of the court to submit the case to the jury. Or as is frequently said, if the testimony is conflicting, and the evidence of such a nature that reasonable men may differ on the issues of fact involved, the case must be submitted to the jury. On the other hand, if the entire testimony is such that a verdict in favor of the party against whom the directed verdict is requested would have to be set aside, there being no substantial conflict in the evidence, it is the duty of the court to direct a verdict.

[**5**] The evidence in this case is that the track of defendant's railroad in the village of Warroad crosses Lake street, the principal street of the village, at right angles, running northerly and southerly. The car in which Anderson was riding on invitation of Nels Engstrom, who was driving the car, Anderson sitting on the front seat with him, was proceeding easterly on Lake street. A train of box cars was backing northerly from the south of Lake street very slowly and could be seen 225 feet west of the track by one in an automobile, and at a point 63 feet west of the track there was a clear view of the track in the direction of the train, without any obstructions. The accident occurred at 2 o'clock p. m., on a bright clear day. Before it reached the crossing, O'Donnell, a brakeman of defendant, stationed at the street crossing for the purpose of warning those about to cross there, motioned to persons in automobiles, standing at the crossing and hesitating to cross, to come over, which they did in safety. The car in which Anderson was seated was then between 80 and 90 feet from the crossing, and not yet on the approach to the crossing, which began 48 feet west of the tracks with a grade of 3.6 feet from the beginning to the track. It was moving very slowly toward the track, when, according to the evidence most favorable to the plaintiff, it was at least 18 feet from the track on the steep approach, the brakeman motioned and yelled to them in a loud voice to stop, which they failed to do, and when on the track, the car was struck by the train and the injuries from which Anderson died inflicted. The evidence established that at the rate the car was moving and the steepness of the grade, it could have been halted within 2 or 3 feet, 4 feet the most. Mrs. Moody, who was in the car with Engstrom and Anderson, sitting on the back seat of the car, testified that "she saw O'Donnell wave at them and heard him shout to stop the car, when they were going up the rise." Mr. Terhune, another witness, testified that "when the car approached the rise, O'Donnell raised his hand and hollered to them to stop." Mrs. Stein and Mr. Allen testified to the same fact. Mr. Brown, a witness for the plaintiff, testified that he was at the office of the Marvin Lumber Company at the time, standing at a window on the east side of the building, looking out of the window, and saw the Engstrom car moving towards the crossing very slowly; it was then about 75 to 80 feet, and may have been 98 feet, from the track. (There was a stipulation that it was 98 feet.) The train had been standing still and began shortly

moving slowly. "When the car came to the rise of the approach, it seemed to kind of hesitate a little and then start up again in motion. I became alarmed and called Mr. Marvin that the train was going to back into the car. There was the usual crossing sign there." While some of the witnesses testified that they did not hear the locomotive whistle or ring the bell, while it was moving, one of them stating that it might have been done without his hearing it, there was positive testimony, by a number of witnesses, that three short blasts were blown and the automatic bell on the locomotive was ringing continuously.

From this testimony no other conclusion can be reached than that had Engstrom, who drove the car, or Anderson, who was seated next to him, stopped to look and listen, they were bound to see the moving train in time to stop the car and prevent the collision, or had they heeded the yells and signals of O'Donnell the accident could not possibly have happened. It was their negligence, and theirs alone, which caused the unfortunate accident, in attempting, as is so frequently done, to cross when a moving train is in sight within a short distance, hoping to make the crossing before the train reached it. Bradley v. Missouri Pacific R. R. Co., 288 Fed. 484, decided by this court on March 28, 1923, and Wabash Railway Co. v. Huelsmann, 290 Fed. 165, decided on May 22, 1923, determine the law applicable to such cases, and the numerous authorities cited in these opinions require us to hold that, on the facts established in this cause, it was the duty of the trial court to direct a verdict for the defendant, unless the fact that Anderson was a guest of Engstrom, who drove the car, relieved him of Engstrom's negligence.

[6] As the undisputed evidence established that Anderson was in a position to see the danger as fully as Engstrom, and made no objection to Engstrom's attempt to cross in front of the moving train, he is affected to the same extent Engstrom was. Davis v. Chicago, R. I. & P. Ry. Co., 159 Fed. 10, 88 C. C. A. 488, 16 L. R. A. (N. S.) 424; Rebillard v. Milwaukee, etc., Ry. Co., 216 Fed. 503, 133 C. C. A. 9, L. R. A. 1915B, 953. Brommer v. Pennsylvania R. Co., 179 Fed. 577, 103 C. C. A. 135, 29 L. R. A. (N. S.) 924; Hall v. West Jersey & S. R. R. Co., 244 Fed. 104, 156 C. C. A. 532; Bradley v. Missouri Pac. R. R. Co., supra.

The judgment is affirmed.