VIRGIL N. CHILDERS, plaintiff in error, *vs.* MELVINA ADAMS, defendant in error.

An action of ejectment was instituted in the name of a trustee of a married woman against the defendant, to recover the possession of a tract of land, the title to which was claimed under a marriage settlement deed. The demise in the declaration was alleged to have been made by the lessor of the plaintiff in the name of the trustee of Melvina Adams, a *feme covert*. During the pendency of the suit, the husband of the *feme covert* died, and on the trial of the case, the Court allowed the declaration, on motion of plaintiff's counsel, to be amended, by striking out the name of the trustee, so as to leave the demise in the name of Melvina Adams as the plaintiff's lessor:

Childers *vs.* Adams.

*Held,* That, under the provisions of the Code, there was no error in the Court in allowing the amendment, inasmuch, as on the death of the husband, the legal and equitable title to the land was in the widow, and that she could recover in her own name by showing title to the land in herself as the plaintiff's lessor.

It is also shown, by the evidence in the record, that on the 26th June, 1848, Bennett Adams and Melvina Brinson executed an ante-nuptial contract, or marriage settlement, by which, all the property she then had, or might thereafter have, should be her separate estate and property, the legal title of which was vested in a trustee for the joint use and benefit of herself and husband during her coverture, with power to sell and dispose of the property in any way she might think fit, in as ample a manner as if she was a *feme sole,* such disposition of said property by her to be the written conveyance, or other title papers that may be executed by the trustee named in the deed, with the consent of the said Melvina Brinson, *written and signed by her, upon said conveyance, or other evidence of title,* of the said named trustee. This marriage settlement was not recorded until the 8th January, 1857. On the 12th January, 1857, the trustee named in the marriage settlement, conveyed the tract of land in dispute to Mrs. Melvina Adams, the legal effect of which, was to vest the title in her husband by virtue of his marital rights; provided the conveyance had been made by the trustee in pursuance of the terms of the marriage contract, but the written consent of Mrs. Adams *upon that deed of conveyance,* does not appear, as required by the marriage settlement. On the 15th of January, 1857, Adams and his wife conveyed the land in dispute to McBryde. The evidence in the record shows, that she was coerced to join in the deed by the threats of her husband. The land was sold at sheriff's sale as the property of McBryde, and purchased by McGuire, who sold to the defendant. The evidence in the record shows that this tract of land was a part of the property which Mrs. Adams received from her father's estate, and was, therefore, a part of the property embraced in the marriage settlement:

*Held,* That the deed from the trustee, Ryals, to Mrs. Adams, not having been executed in accordance with the terms and manner prescribed in the marriage settlement, did not convey any title to her, or to her husband, to the land in dispute, and they not having any title under that deed, conveyed none to McBryde; that Mrs. Adams (the coercion of her husband being out of the question) did not convey the land in accordance with the mode prescribed in the marriage settlement, so as to defeat her right and title to the land secured to her by its terms and provisions. All the parties claiming to have purchased the land under McBryde's title, done so after the marriage settlement was recorded; and in any view that we have been enabled to take of this case, from the evidence in the record, the verdict of the jury was right, under the

law applicable thereto, and we will not disturb it for any of the alleged errors complained of by the defendant.

Ejectment. Married Women. Statute of Limitations. Before Judge CLARK. Dougherty Superior Court. June Term, 1870.

This was ejectment, in favor of John Doe, upon the single demise of "N. P. Brinson, trustee of Melvina Adams," against Childers, tenant in possession. It was begun in November, 1861, and was tried in June, 1870. It was admitted that Reuben Ryals was the common *propositus* of plaintiff and defendant. Plaintiff read in evidence a deed from Ryals to Melvina Adams, her heirs and assigns, made the 12th of January, 1857, and recorded on the 6th of February, 1857. He also read in evidence a deed made the 26th of June, 1848, between Bennett Adams, and Melvina Brinson, and said Ryals, whereby, in consideration of the marriage of said Bennett and said Melvina, about to be solemnized, said Bennett covenanted " that all the property, of whatsoever description, real and personal, that the said Melvina Brinson may now be possessed of, as her own property, or of which she may be, alone, hereafter possessed of, in her own rights, or in the rights of any other person or persons whatsoever, as well that which may be given her by any person or persons whatever, or which may be inherited by her from her father's estate, or any other person or persons whatever, shall form, and remain to be, her separate estate and property, and shall not, in law or equity, be subject to the payment of the debts of the said Bennett Adams, or be subject to be sold or conveyed, or in any manner controlled by him, the said Bennett Adams, only so as to give him the use and benefit of said property during the coverture, jointly with the said Melvina Brinson ; but the right and title of said property shall be vested in the said Reuben Ryals, of the third part, for the use and benefit of said parties of the first and second parts. And said Bennett Adams further

covenants and agrees that the said Melvina Brinson may sell and dispose of the said property in any way that she may think fit, in as full and ample a manner as if she were *feme sole*, all of which disposition of said property by the said Melvina Brinson shall be the written conveyance, or other papers that may be executed by the said Reuben Ryals, with the consent of the said Melvina Brinson, written and signed by her upon said conveyance, or other evidence of title of the said Reuben Ryals." This paper was recorded on the 8th of January, 1857.

N. P. Brinson then testified that, Ryals died in 1860 or 1861, and that Bennett Adams died in 1865; that Melvina opposed selling the property to McBryde, and told McBryde and Boynton that it was hers, and that she would not sell it; McBryde and Boynton tried to buy the land from Bennett Adams, and they and witness went to Ryals to get him to convey it to McBryde, but Ryals said he would not make a deed to any one but Mrs. Adams and her children, and he did convey it to her as a portion of her share of her father's estate. Boynton was sheriff, and was pressing Adams with *fi. fas.* against Adams as security, and he bought the land from Adams and only gave up said *fi. fas.* in payment, and had the deed made to McBryde. After proof, as to rental value, plaintiff closed. Defendant moved for a non-suit, because no title was shown in Brinson, trustee. Plaintiff amended by striking out the words, " N. P. Brinson, trustee of," so as to proceed upon the demise of Melvina Adams. The non-suit was overruled.

Defendant read in evidence a deed from Bennett Adams to Melvina Adams, dated the 15th of January, 1857, to McBryde, recorded on the 10th of February, 1857., It was admitted that the property was sold, at sheriff's sale, as McBryde's property, on the 5th of April, 1859, to McGuire, who, on the 4th of October, 1859, conveyed it to defendant. It was shown that Boynton took possession of the land in 1857 or 1858, and that defendant took possession before the

war, probably in 1859; that Boynton held under McBryde, and held possession till defendant bought the land, and that ever since, defendant held possession. There was other evidence as to rental value.

In rebuttal, Melvina Adams testified to the same that Brinson had sworn; that she was compelled, by her husband's threats to kill her if she refused, to sign the deed; that she told McBryde and Boynton that she was opposed to signing it, and that the *fi. fas.* given up to her husband, in consideration of said deed, were for debts on which he was security before their marriage.

Defendant's counsel requested the Court to charge the jury: 1st. That, in 1857, a deed to a wife vested the property in her husband. 2d. That if Mrs. Adams had a separate estate, her deed to McBryde, taken with the deed from Ryals, was a substantial compliance with the terms of the marriage contract, even if the land was covered by said contract. 3d. That if the land was sold to pay debts against Adams, to creditors who gave him credit before said contract was recorded, the sale was good as to those creditors. 4th. That Mrs. Adams, being *covert* in 1861, could not maintain this suit, unless, under said contract, she had the right to sell or convey. 5th. That if she had the right to sue, she had the right to convey, and the deed to McBryde is good. 6th. That the Statute of Limitations ran in defendant's favor from the time Mrs. Adams had the right to sue, and if defendant had had possession for seven years, she could not recover; and last, that, though *covert*, she could have sued by her trustee, and the declaration shews that she did sue.

The Court refused so to charge. After stating the issue and the evidences of title relied upon, he charged as follows: The land when conveyed to Mrs. Adams, in January, 1857, became her separate estate under the marriage contract, and was held for her use and benefit by the trustee in the contract mentioned, and was subject to all the conditions and limitations in said contract. If the deed from Adams and

Childers *vs.* Adams.

wife was made on the part of Mrs. Adams without her free will and consent, but under the restraint and coercion of her husband, with the knowledge of McBryde, it is void.  And whether McGuire was bound by the notice to McBryde or not, he was bound to take notice of the provisions of the marriage contract, which was on record, and so was Childers, who bought from McGuire.  The record was notice to all the world, not only of the trust estate, but of the limitations of the contract, and they took no title.  To entitle defendant to the prescription set up, he must shew seven years adverse possession from the 15th of January, 1857, to the commencement of the suit, and if the suit was brought in 1861, that part of his defense falls to the ground.  He also charged as to *mesne* profits, instructing them to give credit for any improvements made by defendant.

The jury found for plaintiff the premises in dispute and $1050 00 for *mesne* profits.  Defendant's counsel moved for a new trial upon the ground that the verdict was contrary to the law and evidence, and as to *mesne* profits excessive; because the Court refused to charge as requested, and charged as he did, in that he assumed that this property was covered by the marriage contract; in holding that under this amended demise the suit was brought in 1861; in holding Childers had such notice as to affect him.  The new trial was refused, and that is assigned as error.  (There was a motion to dismiss the writ of error because the Clerk had not certified that the bill of exceptions was "just as it was received from the Judge," as required by Rule 30 of this Court.  See 39th Georgia, 731.)  The motion was overruled.

VASON & DAVIS, by R. H. CLARK, for plaintiff in error.

STROZIER & SMITH, for defendant in error.

WARNER, J.

There was no error in the Court below in allowing the amendment of the plaintiff's declaration on the statement of facts in this case, under the provisions of the Revised Code. The verdict of the jury was right under the law applicable to the facts disclosed by the record, and this Court will not disturb it for any of the alleged errors complained of by the defendant.

Let the judgment of the Court below be affirmed.