## McDONALD v. STATE OF NEBRASKA.

(Circuit Court of Appeals, Eighth Circuit. March 19, 1900.)

### No. 1,336.

1. NATIONAL BANKS—INSOLVENCY—LIABILITY TO DEPOSITOR.
   The fact that certificates of deposit issued by a national bank to a state treasurer in his official capacity, for money of the state deposited, were surrendered by his successor in office, who had the amount credited in his general account as treasurer, cannot affect the liability of the bank to the state for the money actually deposited, and which was never repaid, nor does it justify its receiver in contesting the claim of the state or its treasurer therefor, where there is no defense to such claim on its merits.

2. JURISDICTION OF FEDERAL COURTS—ACTION AGAINST RECEIVER OF NATIONAL BANK.
   An action against a receiver of a national bank in his official capacity is one arising under the laws of the United States, of which a federal court has jurisdiction.[1]

3. PLEADING—AMENDMENT—SUBSTITUTION OF PLAINTIFFS.
   To a petition filed in the circuit court by the treasurer of the state of Nebraska in his official capacity against the receiver of an insolvent national bank to recover money of the state deposited in such bank, the defendant demurred on the ground that the plaintiff had no legal capacity to bring the action, which could alone be brought by the state. The court sustained the demurrer and permitted the petition to be amended by the substitution of the name of the state as plaintiff. Held, that the court had power, under Rev. St. § 954, as well as under the statutes of the state (Code Civ. Proc. Neb. §§ 144, 145), to permit the amendment.

4. LIMITATION—EFFECT OF AMENDMENT OF PETITION.
   As such amendment made no change in the cause of action, or, in fact, in the real parties, it related back to the commencement of the action for the purposes of the statute of limitations.

5. NATIONAL BANKS—RECEIVERS—RIGHT TO PLEAD LIMITATION.
   Whether the receiver of a national bank can plead the statute of limitations to an action on a claim against the bank which was not barred at the time of his appointment, quære.

6. PLEADING—AMENDMENT.
   At this day the party who seeks to profit by an error or mistake in pleading must be able to invoke the principle upon which the law of estoppel is founded.

[1] As to jurisdiction of cases involving federal questions, see note to Bailey v. Mosher, 11 C. C. A. 308, and, supplementary thereto, note to Montana Ore-Purchasing Co. v. Boston & N. C. C. & S. Min. Co., 35 C. C. A. 7.

In Error to the Circuit Court of the United States for the District of Nebraska.

The state of Nebraska, by and through her state treasurer, deposited in the Capital National Bank of Lincoln, Neb., in money which belonged to the state, the sum of $285,351.85, and took from the bank certificates of deposit for the sum, payable to the state treasurer in his official capacity. The incumbent of the office of treasurer of state was changed from time to time. On the 16th day of January, 1893, the then state treasurer returned to the bank the certificates of deposit for the money of the state previously deposited by his predecessor in office, and the amount thereof was placed to the credit of the treasurer of state on the books of the bank. On the 20th of January, 1893, the bank failed. Prior to its failure, the sum of $48,990.02 of the state money deposited in the bank had been checked out, leaving the sum of $236,361.83 belonging to the state in the bank on the date of its failure. Soon after the failure of the bank, the comptroller of the currency, in pursuance of the powers conferred on him by the act of congress in that behalf, appointed a receiver for the bank. The treasurer of the state, in his official capacity and on behalf of the state, twice presented to the receiver of the bank for allowance the claim for the money of the state which the bank held at the date of its failure, namely, $236,361.83. That officer refused to allow the claim. After the receiver refused to allow the same, the treasurer of state, in his official capacity, brought this suit against the receiver to recover this sum of money for the state. The term of office of the treasurer who brought the suit expired, and his successor in office, John B. Meserve, was substituted as plaintiff. Demurrers to the petition and amended petition were filed, one ground of which was that the treasurer of state had no legal capacity to sue for the money, but that the suit should be brought by and in the name of the state. This ground of demurrer was sustained by the court, and thereupon, by leave of the court, the name of the state of Nebraska was substituted as plaintiff in the action for that of her treasurer, and the petition was amended accordingly. A demurrer was filed to this amended petition, which was afterwards, by leave of the court, withdrawn, and the defendant filed a motion to strike the amended petition from the files for various reasons, which was overruled; and a demurrer was then filed to the amended petition substituting the state as the plaintiff in the action, which was also overruled. Afterwards the defendant filed an answer, and the case was tried to a jury, resulting in a verdict and judgment for the plaintiff for $236,361.83, this being the balance of the state money deposited in the bank by the treasurer of the state, and remaining there at the date of the bank's failure; and thereupon the defendant sued out this writ of error.

G. M. Lambertson and A. E. Harvey (Frank M. Hall, on the brief), for plaintiff in error.

C. J. Smyth, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The indisputable facts having relation to the merits of this case are: That the state of Nebraska, by her treasurer, deposited in the Capital National Bank of Lincoln, Neb., money of the state amounting to the sum of $285,351.85. There is no pretense that this deposit was not made, or that it was not the money of the state. There is no pretense that the bank ever paid this money back to the state, or to any officer of the state, or to any person whomsoever, except the sum of $48,990.02; and there is no pretense that the bank was not indebted to the state, at the time of its failure, on account of the money of the state thus deposited in the bank, in the sum of $236,-

361.83. In view of these indisputable facts, the attitude of the receiver in this case is not one which commends itself to the court. He is a public officer, charged with the duty of collecting the assets of the insolvent bank and disbursing the same pro rata among its honest creditors. Why a public officer charged with such a trust should refuse to allow the claim of the state of Nebraska for the actual money of the state deposited in the bank by her treasurer in his official capacity, and remaining therein at the date of the bank's failure, passes our comprehension. Why should the assets of the bank, already grossly inadequate to discharge its obligations, be further diminished by incurring costs and attorney's fees in resisting such a confessedly just and meritorious claim?

Something is said in the record and briefs about the certificates of deposit issued by the bank for the money of the state when it was deposited in the bank. Concerning these certificates, it is enough to say that they were returned to the bank by the treasurer of state, but the money they represented—and they represented an actual deposit of money—was not repaid to the state or her treasurer, but remained in the bank to the credit of the treasurer of state in his official capacity. Whatever bearing these certificates of deposit may have on the question of the liability of the different treasurers of state through whose hands they passed, or on the liability of the sureties on the bonds of these treasurers, or on the liability of the sureties of the bank on the bond given to the state to secure money deposited in the bank by the state, they cut no figure at all in the case against the bank or its receiver. With or without certificates of deposit, and without regard to what may be the liabilities of others to the state for this money, the bank and its receiver are unquestionably liable therefor. No defenses going to the actual merits of the cause of action are interposed. Certain technical defenses are set up, which will now be considered.

It is contended that the court had no jurisdiction of the action; that the receiver was not liable to be sued in the circuit court. But the action is one arising under the laws of the United States, and for that reason was properly brought in the federal court. A receiver of a national bank appointed by the comptroller of the currency in pursuance of the act of congress is charged by the laws of the United States with the execution of certain duties in the performance of which he acts as an agent and officer of the United States. His office is created and his duties defined by an act of congress. In contemplation of law every action brought by or against him in his official capacity arises under the laws of the United States. This action is brought against the receiver in his official capacity for an alleged breach of his official duty to the plaintiff imposed on him by the laws of the United States, and the circuit court had undoubted jurisdiction of the case. Myers v. Hettinger, 37 C. C. A. 369, 94 Fed. 370; Price v. Abbott (C. C.) 17 Fed. 506 (opinion by Mr. Justice Gray); Platt v. Beach, 2 Ben. 303, Fed. Cas. No. 11,215; Stanton v. Wilkeson, 8 Ben. 357, Fed. Cas. No. 13,299; Kennedy v. Gibson, 8 Wall. 498, 19 L. Ed. 476; Bank v. Kennedy, 17 Wall. 19, 21 L. Ed. 554; U. S. v. Hartwell, 6 Wall. 385, 18 L. Ed. 830; Armstrong v.

Ettlesohn (C. C.) 36 Fed. 209; Stephens v. Bernays (D. C.) 41 Fed. 401; Bock v. Perkins, 139 U. S. 628, 11 Sup. Ct. 677, 35 L. Ed. 314; Hot Springs Independent School Dist. v. First Nat. Bank (C. C.) 61 Fed. 417. If the action had been brought in the state court, it scarcely admits of a doubt that the receiver would promptly have removed it into the federal court. Costs and delay were saved by bringing it in that court in the first instance.

Other contentions of the plaintiff in error are that the substitution of the state of Nebraska as plaintiff in the action was a change of the cause of action, and was equivalent to the bringing of a new action, and that, as the statute of limitations had run against the plaintiff's claim before the substitution was made, the cause of action is barred. It is not now material to inquire whether the suit was not properly brought, in the first instance, in the name of the treasurer of the state. The receiver insisted that the treasurer of state, in his official capacity, was not, and the state was, the proper party to maintain the suit on the cause of action set out in the petition. Having assumed that position, and succeeded in maintaining it, he cannot now assume a contrary position.

The state of Nebraska early adopted the reformed system of pleadings, and there is probably no state in the Union whose courts have given to that system a more liberal and enlightened interpretation, or one more in harmony with its obvious, and, we may say, expressed, purpose and intent. The Code of that state abolishes all common-law forms of actions, and, in common with the Codes of many other states, contains these provisions:

"Sec. 144. The court may, either before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process, or proceeding, by adding or striking out the name of any party, or by correcting any mistake in the name of a party, or a mistake in any other respect, or by inserting other allegations material to the case, or, when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved. And whenever any proceeding taken by a party fails to conform, in any respect, to the provisions of this Code, the court may permit the same to be made conformable thereto, by amendment.

"Sec. 145. The court in every stage of an action, must disregard any error or defect in the pleadings or proceedings, which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect."

Beyond all question these provisions authorized the court to allow the amendment that was made in this case. Not only so, but when the court ruled that the action should be prosecuted in the name of the state of Nebraska it was its duty to allow the amendment substituting the state as the plaintiff in the action. Section 145 is mandatory. It declares the court "must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party." Under the Code in Nebraska there is no such thing as a vested right in a technical error or defect in the pleadings or the parties to the action. No error or defect can be regarded which does not affect the substantial rights of the adverse party. Whether the judicial demand upon the bank and its receiver to repay to the state the money of the state which

the bank had received and retained should be made in the name of the state or in the name of the treasurer of the state in his official capacity was purely a technical legal question, which in no wise related to the merits of the cause of action. The cause of action was not changed in the slightest degree by substituting the state of Nebraska as plaintiff in place of the treasurer of state. The cause of action declared on was the same in the original and amended petitions. The petition of the treasurer of state sought to recover of the bank and its receiver, for the state, the money of the state which had been deposited in the bank, and which the bank had never returned to the state. When the name of the state was substituted for that of her treasurer, precisely the same cause of action was counted on, and the same relief asked. The amendment merely substituted the name of the state, who was the real party in interest, for that of her fiscal agent. In the receipt and disbursement of the public funds the state can only act by and through her officers and agents. The money, if any, recovered in this action, must be received and receipted for and deposited in the state treasury by the proper fiscal agent of the state, who is undoubtedly the state treasurer; and the receipt of the treasurer of state to the bank or its receiver for the money sued for in this action would be a good quietus for the same.

Outside of the usual and necessary formal parts of the petition, there were but two averments essential to constitute a statement of a good cause of action in this case: One, that the state, by and through her treasurer, had deposited in the bank the money of the state to the amount of $236,361.83; and the other that the bank and its receiver retained the money, and refused to repay it; and, in substance, this is what is stated in the original and amended petition. The receiver's objection, which resulted in substituting the name of the state as the plaintiff in the action, was not that the state was the proper party to maintain a suit on some other cause of action than that declared on in the petition of the state treasurer, but it was that the state was the proper party plaintiff in that suit, and for the very cause of action declared on in the petition of the treasurer of state. It is obvious, therefore, that the substitution of the state as the plaintiff in the action worked no change whatever in the cause of action.

The views we have expressed are in harmony with the decisions of the supreme court of Nebraska. In an early case in that state (Martin v. Coppock, 4 Neb. 173) the supreme court held that the summons might be amended after service thereof on defendant by changing the plaintiff's name from Isaac Coppock to Isaiah Coppock. The court, speaking by Judge Maxwell, said: "The mistake in the name of Coppock could not have misled Martin, but when the amendment to the summons was made it related back to the time of service;" and the court characterized the defense in the case as "purely technical." In Reed v. Beardsly, 6 Neb. 493, the action was brought against three persons as partners, and, when the proof disclosed that the cause of action was against one of the defendants individually, and not against the firm, the court permitted the plain-

tiff to amend his petition by striking out the name of the firm and the other defendants, and the supreme court said, "This amendment was clearly within the discretion of the court, and was properly allowed," and, after quoting section 144 of the Code of Civil Procedure, the court declared, "A discretion of wider range could hardly be given to the court." In Herron v. Cole, 25 Neb. 692, 41 N. W. 765, the action was brought in the name of "Cole Brothers" as plaintiffs, and the court permitted the petition to be amended so as to make "Cole Brothers, a corporation duly organized and existing under the laws of the state of Iowa," the plaintiff in the action, thus changing the plaintiff from a natural to an artificial person. In McKeighan v. Hopkins, 19 Neb. 33, 26 N. W. 614, an action of ejectment was, by amendment of the petition, changed into a bill to redeem. The court, speaking by Judge Maxwell, said:

"The Code abolished the distinction between actions at law and suits in equity. If, therefore, an action at law is brought to recover a tract of land, the court certainly has the power to permit the plaintiff to amend his petition, so that he may recover the same either at law or in equity. The right to be enforced is the same in either case,—the recovery of the land,—and, so long as the identity of the cause of action is preserved, the petition may be amended by stating such facts as the plaintiff may believe to exist in his favor to entitle him to the relief sought. The restriction in the section above quoted does not refer to the form of the remedy, but the identity of the transaction."

And in answer to the same contention that is made by the receiver in this case, namely, that the amendment must be treated as the beginning of a new suit, and that, so treating it, the cause of action was barred by the statute of limitations before the amendment was allowed, the court said:

"The appellee claims, however, that, even if it is conceded that the court had authority to authorize the amendment in question, still the statute of limitations would run against the cause of action until the amended petition was filed. In Martin v. Coppock, 4 Neb. 173, it was held that the amendment of a mistake in the name of the plaintiff related back to the date of the service, and this, we think, is the general rule. The cause of action is the same although the relief is sought in a different manner from that in the first petition. This, however, does not change the cause of action, and the statute of limitations ceased to run when the summons which was served on him was issued, or, if the service was constructive, at the date of the first publication of the notice."

But, independent of the Nebraska Code and the decisions of the supreme court of that state, we would have no difficulty in upholding the judgment of the lower court in this case both upon principle and authority. The right and duty of the federal courts to allow amendments does not rest on state statutes only. It is conferred on them by the judiciary act of 1789. That act was framed by the great statesmen and lawyers who had actively participated in the struggle to establish the political independence of their country. When this object had been achieved, and the constitution adopted, they framed an act for the organization and government of the national courts, which has remained for more than a century a monument to their great wisdom, foresight, and sense of justice. The thirty-second section of that act was designed to free the administration of justice in the federal courts from all subtle, artificial, and tech-

nical rules and modes of proceeding in any way calculated to hinder and delay the determination of causes in those courts upon their very merits. This act emancipated the judicial department of the government from the shackles of artificial and technical rules, which had theretofore been interposed to obstruct the administration of justice, as completely as the Revolution had emancipated the political department of the government from foreign domination. This was done by investing the federal courts with plenary power to remove by amendment all such impediments to the attainment of justice. From the first, the supreme court of the United States grasped the object and purpose of this enactment. In referring to this section of the judiciary act, the supreme court of the United States, speaking by Mr. Justice Story, said:

"The authority to allow such amendments is very broadly given to the courts of the United States by the thirty-second section of the judiciary act of 1789, c. 20 (now section 954, Rev. St. U. S.), and quite as broadly, to say the least, as it is possessed by any other courts in England or America, and it is upheld upon principles of the soundest protective policy." Matheson's Adm'rs v. Grant's Adm'r, 2 How. 263, 281, 11 L. Ed. 261.

And Mr. Justice Miller, speaking from the circuit bench, declared:

"This section makes more liberal provision for the amendment of process, pleadings, and all proceedings in the federal courts, than any of the modern codes. It is founded on common sense and justice, and ought to be regarded by the circuit courts as mandatory."

Under section 954 of the Revised Statutes the right of amendment extends to the "summons, writ, declaration, return, judgment, and other proceedings in civil causes in any court of the United States," and may be exercised at any stage of the case, even after trial and judgment. The extended and beneficent use made of the authority given by this section to make amendments is disclosed by a long line of decisions of the supreme court of the United States covering every step in a case from the summons to the verdict and judgment. The Caroline v. U. S., 7 Cranch, 496, 3 L. Ed. 417; Jackson v. Ashton, 10 Pet. 480, 8 L. Ed. 898; Garland v. Davis, 4 How. 131, 11 L. Ed. 907; Stockton v. Bishop, 4 How. 155, 11 L. Ed. 918; Conrad v. Griffey, 11 How. 480, 14 L. Ed. 835; Parks v. Turner, 12 How. 39, 13 L. Ed. 883; Tilton v. Cofeild, 93 U. S. 163, 23 L. Ed. 858; Bamberger v. Terry, 103 U. S. 40, 26 L. Ed. 317; Dow v. Humbert, 91 U. S. 294–297, 23 L. Ed. 368; Construction Co. v. Seymour, 91 U. S. 646–655, 23 L. Ed. 341; Hardin v. Boyd, 113 U. S. 756, 5 Sup. Ct. 771, 28 L. Ed. 1141; Railroad Co. v. Cox, 145 U. S. 593, 12 Sup. Ct. 905, 36 L. Ed. 829. Other United States courts have given their sanction to the most liberal exercise of this power. Erstein v. Rothschild (C. C.) 22 Fed. 61 (the opinion is by Mr. Justice Matthews); Bowden v. Burnham, 19 U. S. App. 448, 8 C. C. A. 248, 59 Fed. 752; Smith v. Railway Co., 12 U. S. App. 426, 5 C. C. A. 557, 56 Fed. 458; Carnegie, Phipps & Co. v. Hulbert, 36 U. S. App. 81–97, 16 C. C. A. 498, 70 Fed. 209; People's Saving Bank & Trust Co. v. Batchelder Egg-Case Co., 4 U. S. App. 603, 2 C. C. A. 126, 51 Fed. 130; Tiernan v. Woodruff, 5 McLean, 135, Fed. Cas.

No. 14,027; Swatzel v. Arnold, 1 Woolw. 383, Fed. Cas. No. 13,682.

A defendant has an undoubted right to insist that the person entitled to recover on a cause of action set forth in a petition shall be brought on the record as the plaintiff in the action, to the end that he shall not be compelled to respond twice to the same demand; and that the one suit shall bar all others for the same cause of action. But it has come to be the settled law that where, either by mistake of law or fact, a suit is brought in the name of a wrong party, the real party in interest, entitled to sue upon the cause of action declared on, may be substituted as plaintiff, and the defendant derives no benefit whatever from such mistake; but the substitution of the name of the proper plaintiff has relation to the commencement of the suit, and the same legal effect as if the suit had been originally commenced in the name of the proper plaintiff. The name of the proper plaintiff may be brought on the record at any time during the progress of the cause, and may even be inserted after verdict and judgment. When a wrong party has been named as plaintiff, the action will never be dismissed, and the proper plaintiff required to bring a new action, when the effect would be to let in the bar of the statute of limitations. An action was brought in the name of one member of a firm upon a cause of action belonging to the firm, and it was held in Dixon v. Dixon, 19 Iowa, 512, that the court below erred in not permitting an amendment substituting the firm as plaintiffs in the action. The court said:

"The jury found that the defendant justly owed the money; but, in the opinion of the court below, the technical right to recover was not in the plaintiff, and thereupon the plaintiff, being interested, sought to amend, by adding the name of his partner, or firm name, and thus bring his right to recover within technical law as well as rest it upon broad justice. There is one fact of controlling influence in the determination of this case, and that is, it appears from the papers in the case that, unless the plaintiff is permitted to amend, and continue the prosecution of the claim in this suit, it will be barred by the statute of limitations. The jury found that the defendant justly owes the claim, and to permit the plaintiff to amend and recover such just claim will be more evidently in the furtherance of justice than to refuse the amendment and dismiss the action, as did the court below, and thereby defeat the recovery of a claim the justice of which has already been established."

This ruling was reaffirmed by the court in the case of Hodges v. Kimball, 49 Iowa, 577.

In Insurance Co. v. Mueller, 77 Ill. 22, it was held that where an administrator sued upon a policy of insurance the widow and heirs of the assured might be substituted as plaintiffs in the action.

In Lake Erie & W. R. Co. v. Town of Boswell (Ind. Sup.) 36 N. E. 1103, the court permitted the substitution of the town of Boswell as plaintiff in lieu of the trustees of the town.

In Wood v. Circuit Judge, 84 Mich. 521, 47 N. W. 1103, in a suit upon an insurance policy, the heirs of the deceased were substituted for the administrator of the assured.

In McLewis v. Ferguson, 59 Ga. 644, the action was erroneously brought and prosecuted to judgment in the name of the sheriff as plaintiff. The supreme court, Chief Justice Bleckley delivering the opinion, held the sheriff a mere nominal party, "a stranger in a strange land," and directed the name of the sheriff to be stricken

out as plaintiff, and that of the real party in interest substituted, and affirmed the judgment of the lower court. Other cases in that state are to the same effect. Wilson v. Presbyterian Church, 56 Ga. 554; Childers v. Adams, 42 Ga. 352.

In Miller v. Pollock, 99 Pa. St. 202, the action was brought by one having no interest in the cause of action, and the court allowed an amendment substituting the real party in interest as plaintiff. The court said:

"Our statutes of amendments have been liberally construed, and it has been repeatedly held that parties might be stricken out or added whenever, by so doing, the cause can be tried on its merits; and the right to so amend is not confined to a mere mistake of fact in the name of the party. As is said in Com. v. Dillon, *81 Pa. St. 44: 'An action may be commenced in the name of a wrong party by mistake of law, and the legislature meant the power of amendment to extend to that case.'"

In Whitaker v. Pope, 2 Woods, 463, Fed. Cas. No. 17,528, Mr. Justice Bradley, on the circuit, after judgment, and on a motion in arrest of judgment, ordered the name of the plaintiff, who had no legal or equitable interest in the cause of action, to be stricken out of the record, and the name of the real party in interest to be inserted.

Where an administrator sold a claim due to the estate, and afterwards brought suit thereon in his own name as administrator, the supreme judicial court of Massachusetts held that the purchaser of the claim might be substituted as the plaintiff in the action, although he was not the owner of the claim at the time the suit was instituted by the administrator. Buckland v. Green, 133 Mass. 421.

In McCall v. Lee (Ill. Sup.) 11 N. E. 522, the suit was originally brought in the name of Thomas McKee as administrator of a decedent's estate. In the progress of the case it was determined by the supreme court that Henry R. Lee, and not McKee as administrator, was the proper party to maintain the suit, and thereupon the lower court permitted the declaration to be amended by substituting the name of Lee as plaintiff for that of McKee as administrator. This action of the lower court was assigned as error. The supreme court, in disposing of the assignment, said:

"In People v. Abbott, supra, this court intimated that the real party in interest in the prosecution of the claim was Henry R. Lee, the appellee herein, and not Thomas McKee, administrator. Accordingly, after the cause was reinstated, the county court, upon application for that purpose, and after due notice, permitted an amendment to be made, substituting the name of appellee as plaintiff in the place of that of McKee, administrator. It is charged that this amendment was improper; that its allowance amounted to the filing of a new claim by a new party, after the two-years limit for the filing of claims had expired; and that, therefore, the circuit court erred in directing the judgment in appellee's favor to be paid out of the assets of the estate, in due course of administration, instead of directing it to be paid out of subsequently discovered or noninventoried assets. In this case the amendment did not make a new cause of action. * * * After the substitution of appellee's name, the claim was still for the same notes and property. April 11, 1881, the day on which it was filed, was within the two years. Where no new cause of action is introduced, courts will allow amendments liberally, for the purpose of avoiding the running of the statute. We think that the amendment was properly allowed on the authority of the

following cases: McDowell v. Town, 90 Ill. 359; Insurance Co. v. Mueller, 77 Ill. 22; Coal Co. v. Taylor, 81 Ill. 590; Challenor v. Niles, 78 Ill. 78."

In Massachusetts, a suit in equity was brought by a receiver of a corporation, who was not, under the rule which obtains in that state, authorized to maintain it, and the supreme judicial court of Massachusetts held that the bill might be amended by substituting for the name of the receiver the name of the corporation of which he was receiver, and cited the following cases: Buckland v. Green, 133 Mass. 421; Costelo v. Crowell, 134 Mass. 280; Pierce v. Insurance Co., 138 Mass. 151; Bank v. Stevenson, 7 Allen, 489; Byers v. Coal Co., 106 Mass. 131; Wilson v. Welch (Mass.) 31 N. E. 712.

In Morford v. Diffenbacker, 20 N. W. 600, the supreme court of Michigan, Chief Justice Cooley delivering the opinion of the court, said:

"Defendant contends that the court had no power to permit an amendment of the declaration which substituted one party plaintiff for another. This, it is said, made a new suit of it. * * * This contention is plausible, but, we think, not sound."

In Lottman v. Barnet, 62 Mo. 159, the supreme court said:

"Amendments are allowed expressly to save the cause from the statute of limitations, and courts have been liberal in allowing them when the cause of action is not totally different."

In George v. Reed, 101 Mass. 378, the supreme judicial court, speaking by Chief Justice Chapman, said:

"The same remark may be made as to the point that the amendment has the effect to repeal the statute of limitations. It is true that, if the amendment had been refused, and the plaintiffs had been compelled to become nonsuit, and commence a new action, the statute of limitations might be a bar to it. But that fact furnishes no argument against the amendment. In Davenport v. Holland, 2 Cush. 1, an amendment to a petition for review was granted more than a year after final judgment, when a new petition would have been barred by the statute. The amendment was held to be proper. Shaw, C. J., said that it had often been held to be a good reason for granting amendments on terms, instead of nonsuiting a party, and compelling him to bring a new action, that such action would be barred by the statute of limitations. He also said that the provisions of law allowing amendments are highly remedial, and are construed most liberally to cancel error and mistake and to advance justice and right."

The doctrine of this case is reaffirmed by the same court in Sanger v. Newton, 134 Mass. 308, where it is said:

"The fact that the three years within which an original petition could have been filed have elapsed furnishes no ground for refusing the amendment, but rather a reason why it should be allowed, as otherwise substantial justice will be defeated."

In Van Doren v. Railroad Co., 35 C. C. A. 282, 93 Fed. 260, 271, the suit was brought in the name of Laura L. Van Doren, as administratrix of her deceased husband, and subsequently, and after the statute of limitations had run against a suit in her name as widow, she applied to the court for leave to amend the declaration by declaring as widow, instead of administratrix, of her deceased husband. The lower court refused to allow the amendment, but this ruling was reversed by the circuit court of appeals, that court saying:

"Substantial justice requires that such an amendment should be allowed, as a second suit for damages for the death of Henry Van Doren would be barred by the one-year limitation in the Pennsylvania statute."

This court has twice decided that the amendment of a petition has relation to the commencement of the action, and leaves no interval for the statute of limitations to intervene. Bowden v. Burnham, 59 Fed. 752, 8 C. C. A. 248, 19 U. S. App. 448; Carnegie, Phipps & Co. v. Hulbert, 70 Fed. 202, 16 C. C. A. 498, 36 U. S. App. 81.

Moreover, it is a grave question whether it is competent for the receiver to plead the statute of limitations in a suit upon a claim which was not barred when the comptroller appointed the receiver. The receiver is appointed to collect the assets and pay the debts of the insolvent bank. He is the trustee of the assets of the bank for this purpose. The analogy is very close, if not complete, between a receiver of a national bank appointed by the comptroller of the currency under the act of congress, and an assignee in bankruptcy, or an assignee of an insolvent debtor's estate; and it seems to be well settled that such assignees or trustees cannot plead the statute of limitations unless the debt was barred when the trust was created.

In Ex parte Ross, 2 Glyn & J. 330, the lord chancellor said:

"The effect of the commission is clearly to vest the property in the assignees for the benefit of the creditors, and therefore they are in fact trustees; and it is an admitted rule that, unless debts are already barred by the statute of limitations when the trust is created, it is not afterwards affected by lapse of time."

In Wood, Lim. Act. § 202, it is said:

"The same rule also applies to insolvent debtors who avail themselves of insolvency statutes, or who are forced into insolvency by their creditors, and the statute is suspended from the time when notice of the proceedings is given in the manner provided by law. So, too, this rule applies when an insolvent debtor makes an assignment under the statute for the benefit of creditors, and it is held in such cases that the statute ceases to run from the date of the assignment."

The case of Richmond v. Irons, 121 U. S. 27, 52, 7 Sup. Ct. 788, 30 L. Ed. 864, was a suit in equity by the creditors of an insolvent bank to enforce the personal liability of the stockholders. The defendants pleaded that the creditors' claims were barred by the statute of limitations. Upon that question the supreme court, among other things, said:

"In the case of In re General Rolling-Stock Co., L. R. 7 Ch. App. 646, Mellish, L. J., stated that in a case where the assets of a debtor are to be divided amongst his creditors, whether in bankruptcy or in insolvency, or under a trust for creditors, or under a decree of the court of chancery in an administration suit, 'the rule is that everybody who had a subsisting claim at the time of the adjudication, the insolvency, the creation of the trust for creditors, or the administration decree, as the case may be, is entitled to participate in the assets, and that the statute of limitations does not run against this claim, but as long as assets remain unadministered he is at liberty to come in and prove his claim, not disturbing any former dividend.'"

And see Minot v. Thacher, 7 Metc. (Mass.) 348; In re Leiman, 32 Md. 225, 3 Am. Rep. 132, and cases there cited; 46 Cent. Law J. 493, and cases cited. But, as this question was not discussed by counsel, and its determination is not necessary to the decision of the case, we forbear to express any opinion upon it.

There are in the history of the jurisprudence of every country certain epochs which mark the beginning of distinct trains of legal ideas and judicial conceptions of justice. There was a time in England and in this country when the fundamental principles of right and justice which courts were created to uphold and enforce were esteemed of minor importance compared to the quibbles, refinements, and technicalities of special pleading. In that period the great fundamentals of the law seemed little, and the trifling things great. The courts were not concerned with the merits of a case, but with the mode of stating it. And they adopted so many subtle, artificial, and technical rules governing the statement of actions and defenses—for the entire system of special pleading was built up by the judges without the sanction of any written law—that in many cases the whole contention was whether these rules had been observed, and the merits of the case were never reached, and frequently never thought of. Happily for mankind, and for the law itself, that epoch is past in England and in this country, and we now have an epoch in which substance is more considered than form, in which the justice and right of the cause determines its decision, and not some technical error or mistake in the pleadings. In England to-day the amendment complained of in this case would be allowed quite as a matter of course, and the suggestion that the defendant had gained some advantage by the mistake would not be entertained for a moment. There, as here, every error or mistake in the pleadings which does not affect the substantial rights of the adverse party may be cured by amendment; and what is meant by substantial right is a right going to the actual merits of the case. Such a right is not acquired by a mistake or error in pleadings which has not misled the other party to his prejudice. And the prejudice must be actual and irreparable, and not merely theoretical. At this day the party who seeks to profit by an error or mistake in pleading must be able to invoke the principle upon which the law of estoppel is founded. And the emotion of surprise, once so assiduously cultivated by lawyers, has lost its virtue. Extreme sensitiveness to that emotion no longer avails to turn a suitor out of court, or to delay justice.

Other errors assigned have been carefully examined, and found to be entirely without merit. As they are of no general importance, a more particular reference to them is unnecessary. The judgment of the circuit court is affirmed.

SANBORN, Circuit Judge (concurring). This action was by the same party and for the same cause from its inception to its close. It was an action in behalf of the state to recover moneys of the state. The treasurer of the state instituted the suit, but he brought it in his representative capacity in behalf of the state, and not for himself. If he had recovered, the state would have received the benefit of the judgment he obtained. The action might have been maintained by the treasurer in his representative capacity (McIntosh v. Johnson, 51 Neb. 33, 70 N. W. 522), or by the state itself in its own name. In either case the real plaintiff would have been the

same. There was, therefore, no change of the real party plaintiff, and hence neither error nor prejudice by the substitution of the state for its representative, the treasurer, and for this reason the judgment should be affirmed.