Cunningham, Presiding Judge.
The trial court sustained a general demurrer to the amended complaint of the plaintiff, and thereafter, plaintiff electing to stand on its amended complaint, entered judgment- against it, dismissing its bill, and for costs. From this judgment plaintiff, who is plaintiff in error here, brings the case to this court for review. It is only necessary for us, in order to properly dispose of this case, to determine whether the amended complaint states *565 a cause of action or not. We shall therefore, as succinctly as possible, set forth its salient allegations.
From the amended complaint we learn that one Lucy Ann Crandall, who was upwards of eighty years of age, enfeebled in mind and body, and wholly dependent upon others in her business affairs, in May, 1902, permitted Nathan Q. Tanquary, an attorney-at-law residing in the city of Denver, -to organize a corporation known as The Crandall Investment Company, to which corporation she conveyed real property of the aggregate 'value of $300,000; that at and long prior to the time of the organization of. this company the said Tanquary occupied a fiduciary relation to Mrs. Crandall, was her attorney in all of her business affairs, and she relied exclusively upon his advice in such matters; that Tanquary became one of the directors of this corporation, and received stock in it of the value of $5,000, the other directors being Dan Gr. Kirshbaum, a nephew of Mrs. Cr.andall, and the third director and president of the company, was Mrs. Crandall herself. But it is charged that she, because of her physical and mental infirmities, which took her frequently for long periods from the state, was at all times but a nominal director. Kirshbaum held all of the offices not held by Tanquary, except that of president. It is further charged in the complaint that the corporation was organized for the sole and only purpose of putting the defendant Tanquary in complete control of Mrs. Crandall’s property for his own aggrandizement; that he absolutely dominated and controlled the company, without her knowledge or consent. It further appears from the complaint that Kirshbaum died, and that after his death, for a time, Tanquary controlled absolutely the corporation, holding all the offices except that of president, and receiving a salary of $5,000 per annum; that after a time a non-resident brother of Mrs. Crandall was made director, to. take the place made vacant by the *566 death, of the nephew. This brother was also made secretary and vice-president of the company; he was in Colorado only a few times, during the time he held these offices, and then but for a few days at a time. Later this non-resident brother resigned, and was succeeded by a sister of Mrs. Crandall, who, because of her lack of all knowledge pertaining to the affairs of the company, became and was but a nominal officer, the whole power and control of the company being exercised either directly or indirectly by Tanquary; that in January, 1905, Mrs. Crandall was adjudged insane, and her death occurred during the same month; that for more than two years immediately prior to her death, Mrs. Crandall was absent from the state much of the time, and for more than two years immediately preceding January, 1905, Tanquary had unrestrained control of the corporation, and all the other property belonging to Mrs. Crandall. Four months after Mrs. Crandall’s death Tanquary resigned all offices held by him in the corporation, and ceased all connection with the same; that no account or report of his doings in connection with said corporation was ever made by Tanquary. Following his resignation new officers were elected to take charge of the company, but received no aid from Tanquary in their investigation of its affairs. Not until December, 1906, so the bill charges, did the officers of the investment company learn of the irregularities of the defendant, which, according to the allegations, consisted in his malicious and fraudulent conversion to his own use of large sums of money belonging to the company, and to Mrs. Crandall, and the paying of large sums of money to himself for services never performed, and the misappropriation of property and effects, the exact language of the bill being:
“That during the period of time between April 29, 1902, and January 30, 1905, being the time during which he (Tanquary) was in control of the affairs of the said *567 The Crandall Investment Company, as aforesaid, defendant Tanqnary maliciously, fraudulently and with willful deceit, converted to his own use large sums of money belonging to said corporation and said Crandall, and unlawfully and fraudulently paid himself large sums of money for services purported to have been, but which were not, performed by him, and in divers other ways wasted the assets of the said last named corporation, and of said Crandall, and misappropriated its and her property and effects.”
It is elsewhere charged in that bill that Tanquary misappropriated money to the aggregate amount of $35,000, in addition to the value of the stock of the company, which was issued to him at the time of the organization of the company, and which it is alleged is worth $5,000. There are other allegations in' the complaint, which was voluminous, that we.need not summarize.
The prayer of the complaint, which was filed December 7, 1908, asks that Tanquary be compelled to account for . the moneys in his hands belonging to the company, and for ■ judgment against him for any balance remaining in his hands, with interest thereon, and that he be required to transfer and convey to the plaintiff any and all property found to have been acquired by him, either in his own name, or in the name of others, by through, or with the assets of the said The Crandall Investment Company, for costs, and other proper relief.
It appears from an instrument set forth in the amended complaint that Mrs. Crandall left two wills, which occasioned much controversy between her numerous heirs and the beneficiaries named therein. This controversy resulted in the compromise agreement set up in the amended complaint. Plaintiff was .forced by the court to plead this agreement haec verba, the defendant Tanquary having by motion asked for such an order. It would have been more in keeping with the rules of *568 good pleading to have required Tanquary to plead this agreement, if he desired to rely upon it, and thus leave the plaintiff free to have replied by way of confession and avoidance, if it so desired. It is contended on behalf of the defendant in error that his rights, and the claims of the estate against him, were adjusted, and all claims of every kind and nature against him were embraced within and settled by this compromise agreement, one result of which was 'the organization of the Crandall Eealty and Securities Company, the plaintiff in error here. We are unable to say, as a matter of law, after reading the agreement in connection with the allegations of the bill, that- the rights of the plaintiff against Tanquary are concluded by said agreement. It appears that Mrs. Crandall died in January, 1905. The compromise agreement was entered into during the same year, but the exact date of it is not given in the abstract. The complaint avers' that the alleged fraudulent and wrongful acts of Tanquary complained of were not discovered until in 1906. If this be true (and for the purposes of the demurrer it must be assumed to be true) it can hardly be said that the compromise agreement was intended to settle the rights and claims of the estate, or its successor, the existence of which were not at that time known. If it was the intention of all the parties, at the time this agreement was entered into, to compromise the claims of the estate, or of the old Investment Company which was first organized, or of the plaintiff in error, that was created by this agreement and that succeeded to the rights of the old Investment Company, if any existed, against Tanquary, it will work no great hardship upon him to set up that fact by way of an answer and establish it by competent proof, thus entirely, or at least to a large extent, exculpating himself from the grave charges contained in the bill.
Perhaps it should be said that the bill alleges the *569 transfer of all the rights and claims of the first Investment Company, and of all the heirs at law and beneficiaries named in the will, against Tanquary, to the plaintiff in error. The complaint is subject to many of the criticisms urged against it by counsel for defendant in error, but we are disposed to think that it states a cause of action, and that the defendant should be required to answer.
Counsel for defendant in error insists that it is impossible to determine the nature of plaintiff’s cause of action from the complaint, whether it is for money had and received, of in conversion, or for an accounting. We need not trouble ourselves greatly about the precise title that should be used to designate the cause of action set up.—Mitchell v. Turley, 48 Colo., 26; Grimes v. Greenblatt, 47 Colo., 495, 107 Pac., 1115. We have- quoted sufficiently from the bill to make it clear that Tanquary, by it, is fairly advised of the charges against him, and we have no doubt that he will be able, from the allegations of the bill, to intelligently prepare his defense.
“If facts are stated constituting a good cause of action, though not the one the pleader intended, the pleading is good as against a general demurrer.”—Bruhein v. Stratton, 145 Wis., 271, 121 N. W., 1092; Frechette v. Ravin, 145 Wis., 589, 130 N. W., 453; Simpson v. Bantler Co., 142 Mo. App., 490, 126 S. W., 999; Gray v. Sinton, 38 Colo., 178; Gutshall v. Kornaley, 38 Colo., 199; McDonald v. State, 101 Fed., 182; Orman v. Potter, 46 Colo., 54.
“If two causes of action are commingled, and the defendant does not raise the question by motion, he must be prepared to meet both at the trial.”—Beers v. Kuehn, 84 Wis., 33; Little Nell Co. v. Hemby, 45 Colo., 584.
In Herfort v. Cramer, 7 Colo., 480, our supreme court quotes with approval the following from Bliss on Code Pleading, section 425:
*570 “It is said of a demurrer for tlie objection here made, that the pleading, to be subject to demurrer, ‘must present defects so substantial in tbeir nature, and so fatal in their character, as to authorize the court to say— taking all the facts to be admitted — that they furnish no cause of action whatever.’ ”■
Applying this rule to the instant case must, we think, result in the conclusion that the trial court committed reversible error in sustaining the general demurrer of the defendant in error, Tanquary, to the complaint.
The judgment is therefore reversed, and the case remanded with instructions 'to the trial court to enter an order requiring the defendant in error, Tanquary, to answer the complaint within a reasonable time to be fixed by that court. Reversed and Remanded.